**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| HONORABLE PAULA A. PATRICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 2:22-cv-01520** |
| | : | |
| THE DAILY BEAST COMPANY LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS THE DAILY BEAST COMPANY LLC AND LAURA BRADLEY**

BALLARD SPAHR LLP

Kaitlin M. Gurney
Leslie Minora
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  (215) 665-8500
F:  (215) 864-8999
gurneyk@ballardspahr.com
minoral@ballardspahr.com

Seth D. Berlin (*pro hac vice forthcoming*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
T:  (202) 508-1122
F:  (202) 661-2299
berlins@ballardspahr.com

*Counsel for Defendants The Daily Beast
Company LLC and Laura Bradley*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 4

      A.     The Parties ................................................................................................... 4

      B.     Judge Patrick's Interactions with QAnon and Its Supporters ................................. 5

      C.     Prior News Coverage Reporting Judge Patrick's QAnon Connections and Denials ................................................................................................... 7

      D.     National and International Coverage of Judge Patrick's Rulings on the Columbus Statue ........................................................................................... 9

      E.     The *Daily Beast* Article ................................................................................ 10

      F.     Judge Patrick's Lawsuits Asserting Claims for False Light Invasion of Privacy ....................................................................................................... 11

ARGUMENT ....................................................................................................................... 12

I.      THE COURT LACKS PERSONAL JURISDICTION OVER THE DAILY BEAST DEFENDANTS ................................................................................... 12

      A.     No General Jurisdiction ................................................................................. 14

      B.     No Specific Jurisdiction ................................................................................. 15

II.     JUDGE PATRICK'S FALSE LIGHT CLAIM AGAINST THE DAILY BEAST DEFENDANTS FAILS AS A MATTER OF LAW ........................................... 18

      A.     The *Daily Beast* Article's Characterization of Judge Patrick as "QAnon-Linked" Constitutes Protected Opinion ................................................. 19

      B.     The *Daily Beast* Article Provides an Accurate Account of Judge Patrick's Interactions with the QAnon Movement ................................................ 23

      C.     Judge Patrick Does Not and Cannot Plead That the *Daily Beast* Defendants Published the Article with Actual Malice ........................................... 26

CONCLUSION ..................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Diet Madison Ave.*,
  473 F. Supp. 3d 551 (E.D. Va. 2020) ....................................................................17

*Balletta v. Spadoni*,
  47 A.3d 183 (Pa. Commw. 2012) ...................................................................20, 21

*Berg Chilling Systems, Inc. v. Hull Corp.*,
  435 F.3d 455 (3d Cir. 2006) .............................................................................20

*Berwick v. New World Network International, Ltd.*,
  2007 U.S. Dist. LEXIS 22995 (S.D.N.Y. Mar. 28, 2007) ....................................18

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ...............................................................................28

*Blankenship v. Napolitano*,
  451 F. Supp. 3d 596 (S.D. W. Va. 2020) ............................................................18

*Bochan v. La Fontaine*,
  68 F. Supp. 2d 692 (E.D. Va. 1999) ....................................................................12

*Bogash v. Elkins*,
  176 A.2d 677 (Pa. 1962) .....................................................................................19

*Catalanello v. Kramer*,
  18 F. Supp. 3d 504 (S.D.N.Y. 2014) ...................................................................18

*City of Philadelphia v. Sessions*,
  2018 U.S. Dist. LEXIS 69082 (E.D. Pa. Apr. 4, 2018) .........................................6

*Coleman v. Ogden Newspapers, Inc.*,
  142 A.3d 898 (Pa. Super. 2016) ...................................................................27, 29

*D'Onofrio v. Mattino*,
  430 F. Supp. 2d 431 (E.D. Pa. 2006) ..................................................................16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .....................................................................................14, 15

*DeMary v. Latrobe Printing & Publishing Co.*,
  762 A.2d 758 (Pa. Super. 2000) .........................................................................30

*Dodds v. ABC*,
  145 F.3d 1053 (9th Cir. 1998) ............................................................22

*Dowling v. Philadelphia Newspapers, Inc.*,
  1995 Phila. Cty. Rptr. LEXIS 13 (Phila. C.C.P. Feb. 6, 1995)..................24

*Earley v. Gatehouse Media Pa. Holdings, Inc.*,
  2015 U.S. Dist. LEXIS 31065 (M.D. Pa. Mar. 13, 2015)......................28

*Fatouros v. Lambrakis*,
  627 F. App'x 84 (3d Cir. 2015) ............................................................16

*Ferreri v. Plain Dealer Publishing Co.*,
  756 N.E.2d 712 (Ohio Ct. App. 2001)..................................................22

*Freeman v. Johnston*,
  192 A.D.2d 250 (N.Y. App. Div. 1st Dep't 1993)................................18

*Goldfarb v. Kalodimos*,
  539 F. Supp. 3d 435 (E.D. Pa. 2021) ....................................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)............................................................................15

*Gorman v. Jacobs*,
  597 F. Supp. 2d 541 (E.D. Pa. 2009) .............................................16, 17

*Graboff v. Colleran Firm*,
  744 F.3d 128 (3d Cir. 2014)................................................................26

*Grass v. News Group Publications, Inc.*,
  570 F. Supp. 178 (S.D.N.Y. 1983) ......................................................18

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021) ................................................................16

*Ieradi v. Mylan Labs, Inc.*,
  230 F.3d 594 (3d Cir. 2000)................................................................10

*Jankovic v. International Crisis Group*,
  822 F.3d 576 (D.C. Cir. 2016) ............................................................30

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ..............................................................17

*Jones v. City of Philadelphia*,
  73 Pa. D.&C.4th 246 (Phila. C.C.P. May 19, 2005) ......................21, 24

*Joseph v. Scranton Times LP*,
  129 A.3d 404 (Pa. 2015) ........................................................................29

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ...............................................................................12

*Kerrigan v. Otsuka America Pharmacy, Inc.*,
  560 F. App'x 162 (3d Cir. 2014) ...........................................................19

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
  313 U.S. 487 (1941) ...............................................................................18

*Lee v. TMZ Productions Inc.*,
  710 F. App'x 551 (3d Cir. 2017) .....................................................27, 28

*Malik v. Cabot Oil & Gas Corp.*,
  710 F. App'x 561 (3d Cir. 2017) ...........................................................15

*Mann v. Abel*,
  885 N.E.2d 884 (N.Y. 2008)...................................................................23

*Marcone v. Penthouse International Magazine for Men*,
  754 F.2d 1072 (3d Cir. 1985)..................................................................30

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007).............................................................13, 14

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991).........................................................................24, 27

*Mayfield v. NASCAR*,
  674 F.3d 369 (4th Cir. 2012) .................................................................28

*McCafferty v. Newsweek Media Group, Ltd.*,
  955 F.3d 352 (3d Cir. 2020)...................................................... *passim*

*McDowell v. Paiewonsky*,
  769 F.2d 942 (3d Cir. 1985)....................................................................30

*Mellon Bank (E.) PSFS v. Farino*,
  960 F.2d 1217 (3d Cir. 1992)..................................................................14

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...............................................................28

*Nelson Auto Center v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) .................................................................28

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................26

*Palin v. New York Times Co.*,
   510 F. Supp. 3d 21 (S.D.N.Y. 2020) ...................................................20

*Pippen v. NBCUniversal Media*,
   734 F.3d 610 (7th Cir. 2013) ...............................................................28

*Rappaport v. VV Publishing Corp.*,
   637 N.Y.S.2d 109 (N.Y. App. Div. 1st Dep't 1996) ...........................22

*Reese v. Pook & Pook, LLC*,
   158 F. Supp. 3d 271 (E.D. Pa. 2016) ...................................................28

*Ruffing v. Wipro Ltd.*,
   529 F. Supp. 3d 359 (E.D. Pa. 2021) ...................................................15

*Ryniewicz v. Clarivate Analytics*,
   803 F. App'x 858 (6th Cir. 2020) .........................................................28

*Santillo v. Reedel*,
   634 A.2d 264 (Pa. Super. 1993) ...............................................24, 25, 26

*Schatz v. Republican State Leadership Committee*,
   669 F.3d 50 (1st Cir. 2012) ..................................................................28

*Schiavone Construction Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988) ...............................................................27

*Sprague v. Porter*,
   2013 Phila. Ct. Com. Pl. LEXIS 368 (Nov. 1, 2013) .....................19, 27

*Sprague v. Walter*,
   516 A.2d 706 (Pa. Super. 1986) ...........................................................30

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .........................................................................27, 29

*St. Surin v. Virgin Islands Daily News, Inc.*,
   21 F.3d 1309 (3d Cir. 1994) .................................................................27

*Standing Committee on Discipline of U.S. District Court v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ...............................................................22

*Tah v. Global Witness Publishing, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) .............................................................28

*ToDay's Housing v. Times Shamrock Communications, Inc.*,
21 A.3d 1209 (Pa. Super. 2011) .......................................................................................24

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ......................................................................................27, 30

*Walden v. Fiore*,
571 U.S. 277 (2014) ..........................................................................................13, 15, 16

*Walker v. Beaumont Independent School District*,
938 F.3d 724 (5th Cir. 2019) ...........................................................................................28

*Wood Services v. Disability Advocates, Inc.*,
342 F. Supp. 3d 592 (E.D. Pa. 2018) ...............................................................................20

*Young v. New Haven Advocate*,
315 F.3d 256 (4th Cir. 2002) ...........................................................................................17

## Statutes

42 Pa. C.S. § 5322(b) .......................................................................................................14

N.Y. Civ. Rights Law §§ 70-a ..........................................................................................20

N.Y. Civ. Rights Law § 76-a ............................................................................................20

## Other Authorities

Fed. R. Evid. 201 ..........................................................................................................6, 9

Defendants, The Daily Beast Company LLC and Laura Bradley (collectively, "the *Daily Beast* Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The Plaintiff in this action, The Honorable Paula A. Patrick, is a sitting judge and 2021 Pennsylvania Supreme Court candidate.  She is, for the second time, suing two New York Defendants in Pennsylvania for false light invasion of privacy—a claim that the state of New York does not recognize—for having described her as "QAnon-Linked."  Earlier this year, Judge Patrick filed a substantially similar case in the Philadelphia Court of Common Pleas against the same two defendants, The Daily Beast Company LLC, publisher of the New York-based online publication *The Daily Beast*, and its reporter, Laura Bradley.  But she withdrew that earlier case after the *Daily Beast* Defendants challenged both personal jurisdiction and the merits of her complaint, *see* Ex. 1 (Pa. C.C.P. Compl.), and later re-filed her case in this Court.[1]  As explained below, Judge Patrick's false light claim fares no better here.

As a threshold matter, the Court lacks personal jurisdiction over the *Daily Beast* Defendants, as neither the company nor its reporter has sufficient connections to Pennsylvania. The Daily Beast Company has no offices or assets in Pennsylvania, and just one employee who works remotely in the Commonwealth but reports to the New York office (and who had no involvement in the challenged article).  Ms. Bradley, who wrote the article at issue, cannot recall

---

[1] Judge Patrick's state court lawsuit had also named *The Philadelphia Inquirer* and one of its reporters as additional defendants.  *Id.*  In this Court, Judge Patrick has dropped *The Inquirer* and its reporter as defendants but continues to allege that the *Daily Beast* Defendants improperly relied on *The Inquirer*'s purportedly "flawed reporting."  Compl. ¶ 21.

having ever been to Pennsylvania.  She drafted the article exclusively in New York, and directed it to the publication's national audience, just like other national and international news outlets that covered the same controversy.  The Complaint itself avers that the *Daily Beast* Defendants conducted no interviews in and made no calls to Pennsylvania.  Compl. ¶ 23.

Turning to the merits, the *Daily Beast* article accurately summarized the two reasons why Judge Patrick recently had garnered substantial public attention.  First, in the midst of her campaign for a seat on Pennsylvania's high court, Judge Patrick gave a lengthy YouTube interview to a QAnon-affiliated talk show host whom she referred to as "Prophetess."  During the interview, Judge Patrick told the Prophetess, "I love you guys, and I'm so happy to have met you. . . .  You guys are tremendous, and I thank you so much for the opportunity to speak to your audience."  During the interview, the Prophetess noted that Judge Patrick was considering attending an upcoming QAnon-affiliated conference, and Judge Patrick responded, "Yes."  Judge Patrick also told *The Inquirer* that she had been introduced to the Prophetess by Mark Taylor, a QAnon leader who calls himself a "Prophet," and explained that he had been trying to help her with her Supreme Court campaign.  *See* Ex. 1 (Pa. C.C.P. Compl. at Ex. B).  Towards the end of the interview, the Prophetess showed a campaign ad for Judge Patrick, apparently supplied by her campaign.  Judge Patrick subsequently appeared on a list of featured speakers for the QAnon-affiliated conference, "Patriots Arise, Awakening the Dead!"  But apparently she had second thoughts, later telling *The Inquirer* that she would not be attending and stating, "[t]here's no way I would link myself to anything that would be questionable like that."  *Id.*

Second, Judge Patrick presided over a high-profile dispute involving a statue of Christopher Columbus in South Philadelphia.  Her rulings, which prevented the City from removing the statue and required that a plywood encasement over the statue be removed or

replaced with a transparent protective barrier, have been the subject of both national and international interest.

The *Daily Beast* article accurately reported the true facts that (a) Judge Patrick ordered the plywood box covering the statue removed (and permitted it to be replaced with a clear protective barrier), (b) she had participated in "an interview with supporters of the [QAnon] conspiracy theory," (c) she "was once allegedly on the speaker's list for a QAnon-linked event," (d) she later "denied that she ever planned to attend a QAnon-affiliated event," and (e) notwithstanding her comments during her interview with the Prophetess, Judge Patrick had "told the *Inquirer* she had no idea why she was listed as a speaker" for the event.

Based on these indisputably true statements, the *Daily Beast* article also expressed various opinions about the judge (including that she is "embroiled in her own drama" and is a "QAnon-Linked Judge") and about the hotly contested nature of the dispute over the statue (describing it as both an "unhinged war" and an "increasingly unhinged battle"). Despite the *Daily Beast* article's demonstrably true statements and protected commentary, Judge Patrick complains that the article casts her in a false light by characterizing her as a "QAnon-Linked Judge," and calls her "competency and objectivity as a jurist into question." Compl. ¶ 22.

Her claim fails on the merits and should be dismissed for three independent reasons:

- *First*, the characterization of Judge Patrick as a "QAnon-Linked Judge" reflects the *Daily Beast* Defendants' protected opinion based on disclosed facts. The article notes her friendly interview with the Prophetess, her inclusion on the list of speakers for a QAnon-affiliated conference, and her later decision not to attend and to disavow the conference, allowing readers to draw their own conclusions about the nature and extent of her relationship with the group. An opinion based on such disclosed facts is

absolutely protected under both Pennsylvania law and the First Amendment.

- **Second,** to the extent the term "QAnon-Linked" can be read as a factual claim, it is true.  Judge Patrick *has* been linked to QAnon, including through her interview with the Prophetess, through the inclusion of her campaign ad in that interview, and through the Prophet's work trying to help her campaign.  And the conference, which she evidently considered attending, unquestionably *was* "QAnon-Linked."  Because the statement on which a false light claim is based must first and foremost be false, her claim fails under Pennsylvania law and the First Amendment.

- **Third**, Judge Patrick is required under Pennsylvania law and the First Amendment to plead facts that, if proven, would constitute clear and convincing evidence of "actual malice"—*i.e.*, that the *Daily Beast* Defendants knew the statements that Judge Patrick challenges were false or seriously doubted their truth, yet published them anyway.  Because she has not done so (and cannot do so), her claim fails.

## FACTUAL BACKGROUND

### A.    <u>The Parties</u>

The Plaintiff, Judge Paula A. Patrick, has served as a judge on the Court of Common Pleas of Philadelphia County since her election in 2003.  Compl. ¶ 17.  In 2021, she was also an unsuccessful candidate in the Republican primary for a seat on the Pennsylvania Supreme Court. Compl. Ex. A.

The Daily Beast Company LLC is a Delaware limited liability company with its principal place of business in New York.  Decl. of Mia Lehmkuhl Libby ("Libby Decl.") ¶ 2.  It publishes *The Daily Beast*, an online news and entertainment publication that reports and comments on "politics, pop-culture, and power" to a national audience.  *See id.* ¶ 3; *see also About Us*, *The*

*Daily Beast*, https://www.thedailybeast.com/company/about-us.  *The Daily Beast* is published solely online.  *Id.*  The Daily Beast has no offices or assets in Pennsylvania, and just one employee in Pennsylvania, who works remotely for the New York office editing national news and who had no involvement in the article at issue in this case.  Libby Decl. ¶¶ 5-6.  As the publication's coverage is national and international in scope, only 3.87% of The Daily Beast's U.S. pageviews (and 3.53% of its U.S. advertising revenue) came from Pennsylvania in 2021.  *Id.* ¶¶ 8-9.

Defendant Bradley has worked as a New York-based reporter for *The Daily Beast* since 2020.  Decl. of Laura Bradley ("Bradley Decl.") ¶ 3.  She holds a Master's degree in journalism from Northwestern University's Medill School of Journalism, and prior to joining *The Daily Beast* was a journalist for *Vanity Fair.  Id.* ¶¶ 2, 3.  She has never lived or worked in Pennsylvania, and does not recall ever having visited the Commonwealth.  *Id.* ¶ 4.  She prepared the *Daily Beast* article entirely in New York, based on her review of news reports in other reputable online publications, highlighting those aspects of the story that would be of interest to *The Daily Beast*'s national audience.  *Id.* ¶¶ 7, 8.  It is undisputed that, in preparing the *Daily Beast* article, Bradley made no calls into Pennsylvania and conducted no interviews in Pennsylvania.  *Id.* ¶ 9; Compl. ¶ 23.

**B.**      **Judge Patrick's Interactions with QAnon and Its Supporters**

Judge Patrick's Complaint describes QAnon as a "crackpot and unhinged conspiracy group."  Compl. ¶ 10.  Her current characterizations aside, she has had significant interactions with members of the group.

On March 24, 2021, during her campaign for the Supreme Court, Judge Patrick

participated in a video interview on a YouTube program called *Up Front in the Prophetic*.[2]  For

more than 40 minutes, Judge Patrick was interviewed by Francine Fosdick, whom she addressed

repeatedly as "Prophetess":

> JUDGE PATRICK:  Thank you so much Prophetess Francine.  It's just awesome
> to be here.  I love you guys, and I'm so happy to have met you through Prophet
> Mark Taylor.  You guys are tremendous, and I thank you so much for the
> opportunity to speak to your audience.

*See* Decl. of Ryan Relyea ("Relyea Decl.") Ex. A at 3:05-3:18 (DVD of interview, *Judge Paula*

*Patrick ~ PA Supreme Court*, In the Prophetic (Mar. 24, 2021)).[3]  About halfway through the

interview, the Prophetess noted that Judge Patrick was "thinking about" attending an upcoming

QAnon-affiliated conference in June.  Judge Patrick responded, "Yes," and proceeded to

welcome the Prophetess's support of her campaign:

> PROPHETESS:  I'm excited that you are thinking about being at our upcoming
> event in June, at the end of June.  Oh my gosh, guys, we need to rally, rally, rally
> with her, Hallelujah.
>
> JUDGE PATRICK:  Yes.
>
> PROPHETESS:  When is the election?  In May, correct?
>
> JUDGE PATRICK:  The election is May 18.  So we need everyone who is a
> citizen of the Commonwealth of Pennsylvania; it doesn't matter which county
> you're in . . . it's a statewide election.  So, if you're a Republican, we need your
> vote in the primary election, May 18th, Paula Patrick. . . .  I want you to

---

[2] The Court may take judicial notice of Judge Patrick's public interview statements because their
reliability "can be . . . readily determined from sources whose accuracy cannot reasonably be
questioned."  *See* Fed. R. Evid. 201; *see, e.g., City of Phila. v. Sessions*, 2018 U.S. Dist. LEXIS
69082, at *4 (E.D. Pa. Apr. 4, 2018) (taking judicial notice of public statements by elected
government officials).

[3] Although Judge Patrick's interview was available on YouTube at the hyperlink
https://www.youtube.com/watch?v=T-IiU0hBqNc at the time the *Daily Beast* Defendants filed
their preliminary objections in the state court lawsuit on March 9, 2022, that video was removed
from YouTube prior to the filing of the Complaint in this action.  A DVD containing a true and
correct copy of the video will be filed with the Clerk of the Court and provided to the Court and
counsel of record as Exhibit A to the Relyea Declaration.

understand the importance of just us pushing conservatives forward now.

PROPHETESS:  It's critical.  It's life or death.  This is where we're at right now.
And if you live here in Pennsylvania, and look at the other states that you're
living in, if there is a . . . Republican judge, conservative, that is running as well,
maybe you should start supporting them, guys, I mean financially and with our
vote.  It is critical; it is critical at this time.

*Id.* at 23:48-25:30.

Judge Patrick subsequently explained to *The Inquirer* (in the article that she challenged as

part of the state court lawsuit, *see supra* note 1) that five years earlier, she had met Mark Taylor,

an outspoken QAnon supporter and "self-described prophet," and he was trying to help her

Supreme Court campaign.  *See* Ex. 1 (Pa. C.C.P. Compl. at Ex. B).

Consistent with her interview with the Prophetess, Judge Patrick appeared on a list of

speakers for the group's June 2021 conference, "Patriots Arise, Awakening the Dead!," to be

held in Gettysburg, Pennsylvania.[4]  When asked about that fact by reporters from *The Inquirer*,

she told them that she "didn't plan to attend" the conference and asserted that she "had never

heard of it."  Ex. 1 (Pa. C.C.P. Compl. at Ex. B).  She further "denied any tie to the group and

said she was 'disturbed' by the suggestion she had one."  *Id.* (stating that "[t]here's no way I

would link myself to anything that would be questionable like that").

C.     **Prior News Coverage Reporting Judge Patrick's QAnon Connections and Denials**

On April 29, 2021, nearly six months before the *Daily Beast* article was published, *The

Inquirer* published an article online bearing the headline, *QAnon supporters listed a Philly judge

as a speaker at their event.  She says she's not going.  See* Ex. 1 (Pa. C.C.P. Compl. ¶ 7 & Ex.

---

[4] A flyer for that QAnon-affiliated conference that featured Judge Patrick's name and photograph
was included in an article in the *Pennsylvania Capital-Star*.  *See* Stephen Caruso, *Mastriano, Pa.
Supreme Court candidate slated to appear at QAnon conference*, Pa. Capital-Star (Apr. 28,
2021), https://www.penncapital-star.com/government-politics/mastriano-pa-supreme-court-
candidate-slated-to-appear-at-qanon-conference/ (attached as Ex. 2).

B).  The lede of *The Inquirer* article reads:

> A Philadelphia judge running for a seat on the state's highest court on Thursday disavowed any connection to QAnon, after supporters of the conspiracy movement listed her as a featured speaker at their upcoming gathering in Gettysburg.
>
> Common Pleas Court Judge Paula Patrick said she wasn't invited to the "Patriots Arise, Awakening the Dead!" event, didn't plan to attend, and had never heard of it until she was asked about it by reporters on Wednesday.

*Id.*  The next day, on April 30, 2021, *The Inquirer* published a nearly identical article in print, entitled *Judge disavows any QAnon link.  See id.* (Pa. C.C.P. Compl. ¶ 1 & Ex. A).  The *Associated Press* wire service picked up the story the same day, further distributing it.  *See Judge running for high court disavows QAnon conspiracy*, AP (Apr. 30, 2021), https://apnews.com/article/conspiracy-courts-government-and-politics-0eb0a8ffb6f9e84756f824663e3f5da4 (attached as Ex. 3).

Although Judge Patrick disclaimed any connection to QAnon, telling *The Inquirer* that "[t]here's no way I would link myself to anything that would be questionable like that," the articles accurately reported that she had previously "appeared for an interview on a YouTube and podcast show [*Up Front in the Prophetic*] hosted by the two conservative media personalities organizing the June conference in Gettysburg."  *See* Ex. 1 (Pa. C.C.P. Compl. at Exs. A, B); *accord* Ex. 3 (*Associated Press* report noting that Judge Patrick "sat for an interview" with the "self-described prophets who are organizing the [Gettysburg] event").  *The Inquirer* also noted that Judge Patrick had acknowledged that she had spoken with "Prophet" Taylor and that he was trying to help her Supreme Court campaign.  *See* Ex. 1 (Pa. C.C.P. Compl. at Ex. B).  According to that article, Mr. Taylor is "a self-described prophet from Florida and prominent QAnon supporter," who "wrote a book claiming God told him in 2011 that Donald Trump would be elected president" and who was "featured in a movie called *The Trump Prophecy*."  *Id.*

D.      **National and International Coverage of Judge Patrick's**
        **Rulings on the Columbus Statue**

Although Judge Patrick lost her primary bid for the Pennsylvania Supreme Court in May

2021, she remained in the news.  She presided over a politically controversial lawsuit filed

against the City of Philadelphia and Mayor Jim Kenney by a group called the Friends of Marconi

Plaza.  The lawsuit sought to block the planned removal of a Christopher Columbus statue in

South Philadelphia.  Compl. ¶ 8 (calling the case "a controversial issue of public import").  Judge

Patrick issued a series of rulings about the statue.  First, in August 2021, she ruled that the City's

decision to remove the statue was unsupported by law and based on insufficient evidence.  Then,

in October 2021, she ruled that the City, which had erected a plywood box encasing the statue,

must remove the box, and that a transparent protective barrier could be installed in its place.

Compl. ¶ 26 (stating that Judge Patrick ruled "against the Philadelphia Mayor's incorrect actions

regarding the Columbus statue, instead following the law and ordering the removal of the

plywood covering of th[e] statue").  The rulings about the statue drew national and international

news coverage, including by *The New York Daily News*, the *New York Post*, NPR, the *Associated

Press*, and the UK-based *Daily Mail*.[5]

---

[5] *See, e.g.,* Jessica Schladebeck, *Phila. judge rules Christopher Columbus statue can remain in plaza*, N.Y. Daily News (Aug. 19, 2021), https://www.nydailynews.com/news/national/ny-philadelphia-judge-christopher-columbus-statue-20210819-xqq3eq3fc5be3b3tntkcpjipwe-story.html (attached as Ex. 4); Christina Coulter & Andrew Court, *Judge rules 144-year-old Christopher Columbus statue in Phila. can remain after city voted to remove it last July 'without any legal basis,'* Daily Mail (Aug. 18, 2021), https://www.dailymail.co.uk/news/article-9906279/Judge-said-Columbus-statue-Philly-remain-city-voted-remove-without-legal-basis.html (attached as Ex. 5); Patrick Reilly, *Philadelphia Columbus statue to remain in box for parade, judge rules*, N.Y. Post (Oct. 10, 2021), https://nypost.com/2021/10/10/christopher-columbus-statue-in-philadelphia-to-remain-in-box-for-parade-judge-rules/ (attached as Ex. 6).  NPR published an Associated Press article about Judge Patrick's ruling.  *See* AP, *Judge Rules Philadelphia Can't Remove a Christopher Columbus Statue*, NPR (Aug. 18, 2021), https://www.npr.org/2021/08/18/1029077566/christopher-columbus-statue-philadelphia-judge (attached as Ex. 7).  A court may take judicial notice of news articles pursuant to Federal Rule of

E.      **The _Daily Beast_ Article**

Months after the controversy over Judge Patrick's links to QAnon and the conclusion of

her unsuccessful campaign for the Supreme Court, and well into the controversy over the

Columbus statue, the _Daily Beast_ published the article at issue on October 9, 2021.  Written by

Bradley and bearing a New York dateline, it commented on Judge Patrick's ruling the day before

in the "unhinged war" over the statue.  Compl. Ex. A.  The article was titled _QAnon-Linked_

_Judge Rules in Unhinged War Over Philly's Columbus Statue_, and bore the subheadline, _After a_

_lawyer threatened to tear down a plywood box covering the statue himself, Judge Paula Patrick_

_ruled that it must remain visible to the public._  Compl. ¶ 4 & Ex. A.  The body of the _Daily Beast_

article hyperlinked to articles in a number of other reputable news publications, including _The_

_Inquirer_, _6ABC Action News_, and _CBS3 Philly_, as sources for the article's information about

Judge Patrick's rulings and the statue controversy.[6]

In addition to the headline's reference to Judge Patrick as a "QAnon-Linked Judge" and

the statue controversy as an "Unhinged War," the first paragraph of the _Daily Beast_ article

further signaled that it was conveying opinion and commentary:

> It's hard to imagine being more in need of a hobby than the members of a group
> called Friends of Marconi Plaza.  According to the _Philadelphia Inquirer_,[7] the

---

Evidence 201.  _See Ieradi v. Mylan Labs, Inc._, 230 F.3d 594, 598 n.2 (3d Cir. 2000) (taking
judicial notice of newspaper article) (citing _Peters v. Del. River Port Auth._, 16 F.3d 1346, 1356-
57 (3d Cir. 1994) ("While not critical to our holding, we take judicial notice of newspaper
accounts highlighting controversies over the DRPA's toll increases, spending practices, and
public announcements.")).

[6] The _Daily Beast_ article remains available online as originally published.  _See_
https://www.thedailybeast.com/qanon-linked-judge-rules-in-war-over-columbus-statue-and-
plywood-box-in-philadelphia?ref=scroll.  Accessing the online version enables readers, as well
as the Court, to access the news sources hyperlinked in the article, links which are unavailable in
the LEXIS version of the article attached to the Complaint.

[7] In the online version of the _Daily Beast_ article, the words "_Philadelphia Inquirer_" in this
passage hyperlink to an _Inquirer_ article, one that Judge Patrick did not challenge in her earlier
state court lawsuit.  _See_ Laura McCrystal & Sean Collins Walsh, _A judge ordered Phila. to_

local group has taken up the most noble of crusades—fighting to defend a statue
dedicated to Christopher Columbus.  And on Friday a judge who was once
allegedly on the speaker's list for a QAnon-linked event ruled that the plywood
box covering the statue must be removed.

*Id.*  The *Daily Beast* article accurately set out the basis for its characterization of Judge Patrick as

"QAnon-Linked" and its statement that she had been "embroiled in her own drama," including

that: (a) she had participated in "an interview with supporters of the [QAnon] conspiracy

theory," (b) she "was once allegedly on the speaker's list for a QAnon-linked event," (c) she later

"denied that she ever planned to attend a QAnon-affiliated event," and (d) she had "told the

*Inquirer* she had no idea why she was listed as a speaker" for the event.  *Id.*

Judge Patrick does not allege that she contacted the *Daily Beast* Defendants before filing

suit, and indeed, she did not.

**F.**   **Judge Patrick's Lawsuits Asserting Claims for False Light Invasion of Privacy**

Judge Patrick filed her state court lawsuit on February 16, 2022, alleging separate claims

of false light invasion of privacy against the *Inquirer* and its reporter (Count I) and the *Daily*

*Beast* Defendants (Count II).  *See* Ex. 1 (Pa. C.C.P. Compl.).  Notably, although *The Inquirer*

articles that she challenged in the state court lawsuit discuss both her interview with the

Prophetess and Prophet Taylor's support for her Supreme Court campaign, her complaint did not

call into question the paper's coverage of either topic.  *Id.*

On March 9, 2022, the *Daily Beast* Defendants filed preliminary objections as well as a

separate motion filed jointly with *The Inquirer* seeking appointment of an out-of-county judge.

---

*remove the plywood box covering the Christopher Columbus statue in Marconi Plaza*, Phila.
Inquirer (Oct. 9, 2021), https://www.inquirer.com/news/columbus-statue-south-philly-marconi-
plaza-20211008.html (attached as Ex. 8).  This article states: "The judge, a Republican, faced
criticism earlier this year when she was listed as a speaker at a Gettysburg event linked to the
QAnon conspiracy theory.  Patrick, however, said she never planned to attend the event and
didn't know why she was listed as a speaker."  *Id.*

On March 15, 2022, the Chief Judge of the Court of Common Pleas appointed The Honorable

Edward D. Reibman of Lehigh County to preside over the case.  Three days later, on March 18,

2022, Judge Patrick withdrew her state court lawsuit.  *See* Ex. 9 (Praecipe to

Withdraw/Discontinue Without Prejudice).

On April 20, 2022, Judge Patrick filed her Complaint in this action.  A substantial

number of the allegations are identical to the prior complaint.  *Compare* Compl., *with* Ex. 1 (Pa.

C.C.P. Compl.).  Although *The Inquirer* is not part of this lawsuit, the Complaint nevertheless

blames the *Daily Beast* Defendants for "us[ing] the false light into which Judge Patrick was

placed by the *Inquirer*'s flawed reporting to further its own agenda and malign Judge Patrick."

Compl. ¶ 21.  As in her prior state court lawsuit, Judge Patrick's sole claim against the *Daily

Beast* Defendants is based on the characterization of her as a "QAnon-Linked Judge" in the

article's headline and the statement in the first paragraph that she "was once allegedly on the

speaker's list for a QAnon-linked event."  Compl. ¶ 22; *see also* Compl. Ex. A.

## ARGUMENT

I.  **THE COURT LACKS PERSONAL JURISDICTION**
    <u>**OVER THE DAILY BEAST DEFENDANTS.**</u>

This action should be dismissed because neither of the *Daily Beast* Defendants has

contacts with Pennsylvania sufficient for this Court to exercise jurisdiction over them.  In that

regard, "[e]ach defendant's contacts with the forum State must be assessed individually."

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Bochan v. La

Fontaine*, 68 F. Supp. 2d 692, 699 n.25 (E.D. Va. 1999) ("A publisher's contacts must be

evaluated separately from an author's contacts; jurisdiction does not necessarily exist over an

author even where it does exist over a publisher.").

The Daily Beast is a Delaware limited liability company with its principal place of

business in New York.  Libby Decl. ¶ 2.  It has never had a Pennsylvania office, has no assets in Pennsylvania, and has one Pennsylvania employee who works remotely for the New York office (and who had no involvement in the article at issue).  *Id.* ¶¶ 5-6.  It publishes *The Daily Beast*, a national news and entertainment publication, solely online.  *Id.* ¶ 3.  It targets its content at a national audience, with readers across the country.  *Id.*  Approximately 3.87% of *The Daily Beast*'s U.S. page views (and, to the extent relevant, 3.53% of its U.S. advertising revenue) can be tied to its Pennsylvania audience.  *Id.* ¶¶ 8-9.  These figures are commensurate with the percentage of the U.S. population—3.9%—who reside in Pennsylvania, *id.* ¶ 7, demonstrating that *The Daily Beast* does not specifically target a Pennsylvania audience.  None of *The Daily Beast*'s limited contacts are sufficient to satisfy due process requirements.  *See id.* ¶¶ 5-9.  As explained below, this Court cannot exercise general jurisdiction over The Daily Beast, and its contacts are insufficient to establish specific jurisdiction, which focuses "on the defendant's *suit-related* conduct."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).

For her part, Ms. Bradley has no connection to Pennsylvania at all.  She has never lived nor worked in Pennsylvania, and cannot recall having ever visited the Commonwealth.  Bradley Decl. ¶ 4.  She prepared the article at issue exclusively in New York.  *Id.* ¶ 8.  She made no telephone calls to anyone in Pennsylvania, sent no emails to anyone in Pennsylvania, conducted no interviews in Pennsylvania, and had no other contact with Pennsylvania in connection with the preparation of the article.  *See id.* ¶¶ 8, 9; Compl. ¶ 23.  Writing for *The Daily Beast*'s national audience, she relied on other reputable news sources that she reviewed online and hyperlinked to in the article.  Bradley Decl. ¶ 8.

A federal court is authorized to exercise personal jurisdiction in accordance with the law of the state where it is located, in this case Pennsylvania.  *See Marten v. Godwin*, 499 F.3d 290,

296 (3d Cir. 2007).  Pennsylvania's long-arm statute, in turn, provides for jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States."  42 Pa. C.S. § 5322(b).  Accordingly, this Court may exercise jurisdiction over the *Daily Beast* Defendants only if each of them has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Marten*, 499 F.3d at 296.  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving personal jurisdiction and must do so by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  *Mellon Bank (E.) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

To meet her burden, Judge Patrick must come forward with facts demonstrating either (1) general jurisdiction, meaning contacts "so 'continuous and systematic' as to render [the *Daily Beast* Defendants] essentially at home in" Pennsylvania, *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), or (2) specific jurisdiction, meaning she must show that the *Daily Beast* Defendants "purposefully directed [their] activities at the forum," such that jurisdiction "comports with fair play and substantial justice," *Marten*, 499 F.3d at 296 (internal marks omitted).  She cannot do either.

A.     **No General Jurisdiction.**  The Complaint does not—and cannot—allege that the Court has general personal jurisdiction over either of the *Daily Beast* Defendants.  Judge Patrick has pleaded no facts that would demonstrate the *Daily Beast* Defendants are "essentially at home in" Pennsylvania, as would be necessary to establish general jurisdiction "to hear any and all claims against" against them in this Court.  *Daimler*, 571 U.S. at 127.

For out-of-state corporate defendants like The Daily Beast Company LLC, general jurisdiction is found only where a corporation's connections are "so continuous and systematic

as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Typically, the only states where a corporate defendant will be "at home" are its place of incorporation and its principal place of business—here, New York.  *Daimler*, 571 U.S. at 137; *see also Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) ("[I]t is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business.") (internal marks omitted).

The same limitation applies to individual defendants such as Ms. Bradley.  Indeed, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile"—here, New York—which forecloses the exercise of general jurisdiction over her in Pennsylvania. *Goodyear*, 564 U.S. at 924.

B.  **No Specific Jurisdiction.**  The Complaint makes the conclusory allegation that the Defendants "targeted" their statements "directly toward" Pennsylvania, including by "publish[ing] their defamatory statements in Philadelphia County, Pennsylvania where they targeted their unlawful scheme."  Compl. ¶¶ 15, 16.  Not only do those threadbare allegations reference a tort that is not at issue (defamation), but they fundamentally misapprehend the law on specific jurisdiction in the context of an out-of-state Internet publication.  *Ruffing v. Wipro Ltd.*, 529 F. Supp. 3d 359, 364 (E.D. Pa. 2021) (to establish "a prima facie case of personal jurisdiction . . . the plaintiff must allege specific facts rather than vague or conclusory assertions") (internal marks and citation omitted).  The fact that the *Daily Beast* Defendants, like several other national and international publications, published an online article about a Philadelphia case to a national audience is insufficient to establish specific personal jurisdiction. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a

particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way."). Because the *Daily Beast* Defendants' "suit-related conduct" did not "create a substantial connection" with Pennsylvania, *id.* at 284, this action should be dismissed for lack of personal jurisdiction. *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (defendant's contacts with the forum "must give rise to—or relate to—plaintiff's claims").

When addressing personal jurisdiction in the context of an online publication, the focus is not on whether residents of the forum state can access an out-of-state website or other digital platform. Rather, this Court examines whether the defendant's conduct was "expressly aimed" at the Commonwealth.[8] *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 547 (E.D. Pa. 2009); *see also Fatouros v. Lambrakis,* 627 F. App'x 84, 87-88 (3d Cir. 2015) (broadcasts and publications that could be accessed over the internet in New Jersey were insufficient to establish specific jurisdiction in that state absent evidence that they targeted New Jersey); *D'Onofrio v. Mattino*, 430 F. Supp. 2d 431, 443 (E.D. Pa. 2006) ("[T]he mere fact that Defendants published their articles nationwide and that some ended up in Pennsylvania is not sufficient to confer jurisdiction over Defendants."). Thus, to establish personal jurisdiction in Pennsylvania, "*something* about the web site must suggest to the user that residents of the forum state are the target audience." *Gorman*, 597 F. Supp. 2d at 548. Put another way, even if the ***subject*** of an article is a forum resident, the relevant question is whether the publication targets the forum state's ***audience***. *Id.* There is simply no evidence, on the face of its website or elsewhere, that *The Daily Beast*

---

[8] Only after a court determines that the defendant's conduct was "expressly aimed" at Pennsylvania does it consider two other factors related to personal jurisdiction, (i) whether the complaint successfully alleges an intentional tort, and (ii) whether the forum state was where the plaintiff suffered any damages. *See Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 452 (E.D. Pa. 2021) ( "Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." (quoting *Marten*, 499 F.3d at 297-98)).

"targeted" a Pennsylvania audience as the Complaint alleges in merely conclusory fashion. Compl. ¶ 15.

The absence of connections to Pennsylvania cannot be overcome by the mere fact that the subject of the *Daily Beast* article is a Philadelphia controversy. Publishing an article of national interest about events in Philadelphia—as other New York-based publications and the London-based *Daily Mail*, among others, have done, *see* Exs. 7 & 8—is, without more, insufficient to confer jurisdiction. In *Gorman*, the Court ruled that it could not exercise jurisdiction over out-of-state defendants where online comments in a podiatry forum were explicitly about a Pennsylvania doctor and malpractice payments made in the Commonwealth. 597 F. Supp. 2d at 543-44. Focusing instead on whether "the forum was the intended target of the statement," the court emphasized that the online podiatry forum was a national website, and "*everything* about the web site confirms that it is directed to the national podiatry community at large." *Id.* at 549-50.

Applying these principles, courts throughout the country have routinely dismissed cases on jurisdictional grounds where a widely-available publication was not specifically aimed at the forum state, even where the challenged publication was about a person or event located within the forum. *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010) (even though challenged postings referenced forum state, court concluded they were not posted "for the very purpose of having their consequences felt in Missouri") (internal marks omitted); *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002) (Connecticut-based newspapers "did not manifest an intent to aim their websites or the posted articles at a Virginia audience" even though articles concerned a Virginia prison warden); *Alexander v. Diet Madison Ave.*, 473 F. Supp. 3d 551, 558 (E.D. Va. 2020) (noting that courts have "rejected the argument that nonresident news

17

organizations open themselves up to suit in a state simply by publishing online articles about that state's residents"); *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 622-23 (S.D. W. Va. 2020) ("It would not be reasonable for [individual defendants] to anticipate being haled into a West Virginia court on the basis of comments in a broadcast about political issues across several states aimed at a national audience."). Because the *Daily Beast* Defendants' article was drafted and published in New York for a national audience, without any contacts into Pennsylvania sufficient to establish specific personal jurisdiction, this action should be dismissed. Libby Decl. ¶¶ 4, 10; Bradley Decl. ¶¶ 4-10.[9]

## II.   JUDGE PATRICK'S FALSE LIGHT CLAIM AGAINST THE *DAILY BEAST* DEFENDANTS FAILS AS A MATTER OF LAW.

Judge Patrick's false light claim against the *Daily Beast* Defendants should also be dismissed because it fails to state a claim for three independent reasons. First, the *Daily Beast* article's characterization of Judge Patrick as "QAnon-Linked" is an expression of opinion based on fully disclosed facts. Second, to the extent that the article's description of Judge Patrick as "QAnon-Linked" could somehow be considered a verifiable statement of fact rather than a characterization of her interview with the Prophetess and related events, it is substantially true

---

[9] The consequences of the jurisdictional question are particularly significant here. While this Court applies Pennsylvania's choice-of-law principles and is likely to apply Pennsylvania law in assessing Judge Patrick's claims, a New York court would apply New York choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 494 (1941). Under those principles, there is compelling authority that, in a case such as this, the substantive law of New York would apply—as it is the state where the article was published and a state with especially strong protections for freedom of speech and of the press. *See, e.g.*, *Berwick v. New World Network Int'l, Ltd.*, 2007 U.S. Dist. LEXIS 22995, at *7 (S.D.N.Y. Mar. 28, 2007) (applying New York law to Pennsylvania plaintiff's defamation claim); *Grass v. News Grp. Publ'ns, Inc.*, 570 F. Supp. 178, 185 (S.D.N.Y. 1983) (same). If New York law applied, Plaintiff would have no claim because New York does not recognize the false light tort. *See, e.g.*, *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 511 (S.D.N.Y. 2014) (stating that "New York does not" recognize the tort of false light invasion of privacy); *Freeman v. Johnston*, 192 A.D.2d 250, 253 (N.Y. App. Div. 1st Dep't 1993) (same).

and therefore cannot be the subject of a false light claim.  Finally, Judge Patrick has not, and cannot, plead facts that, if proven, would constitute clear and convincing evidence that the *Daily Beast* Defendants published the statements in question with actual malice—*i.e.*, with knowledge of their falsity or a high degree of awareness of their probable falsity.  For each of these reasons, Judge Patrick's false light invasion of privacy claim against the *Daily Beast* Defendants fails as a matter of law.

A.    **The *Daily Beast* Article's Characterization of Judge Patrick as "QAnon-Linked" Constitutes Protected Opinion.**

Judge Patrick's claim against the *Daily Beast* Defendants is premised entirely on the *Daily Beast* article's characterization of her as "QAnon-Linked."  *See, e.g.*, Compl. ¶ 22 (asserting that the article "maligns Judge Patrick by affirmatively asserting a link between Judge Patrick and Q'Anon in the headline, and further maligns her by adding the irrelevant and knowingly false 'Q'Anon link' in the body of the story to put Judge Patrick's competency and objectivity as a jurist into question").  Only provably false statements—*not* expressions of opinion—can serve as the basis for a false light claim.  *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020) (affirming dismissal of false light claim because the challenged statements expressed "opinions based on disclosed facts"); *see also Sprague v. Porter*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at *70 (Nov. 1, 2013), *aff'd*, 2014 Pa. Super. Unpub. LEXIS 1659 (Aug. 26, 2014).  Whether a statement is one of objective fact or subjective opinion is a threshold question of law.  *See, e.g.*, *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014).  In Pennsylvania, statements of opinion are protected both under the First Amendment's requirement that a statement must be provably false to be actionable and under Pennsylvania's common law.  *See, e.g., Bogash v. Elkins*, 176 A.2d 677, 679 (Pa. 1962) ("Statements which represent differences of opinion or are annoying or embarrassing, are,

19

without more, not libelous.").[10]

The Third Circuit's opinion in *McCafferty* underscores the point that ascribing ideological, political, or similar labels to a plaintiff is a matter of non-actionable opinion where, as here, the facts supporting the characterization are fully disclosed. *See McCafferty*, 955 F.3d at 358, 360 (professor's statements in a *Newsweek* article that the "hard right" was using two child Trump supporters to "defend[] raw racism and sexual abuse," where facts supporting that characterization were disclosed, were non-actionable opinions that could not support a claim for false light). In reaching that conclusion, the *McCafferty* court observed that "[p]olitical discourse can be bruising," but that consistent with the First Amendment, "[t]he price of free speech is putting up with all sorts of name-calling and hurtful rhetoric." *Id.* at 355; *see also id.* at 359 ("Everyone is free to speculate about someone's motivations based on disclosed facts about that person's behavior.").

*McCafferty* in turn relied on the Commonwealth Court's decision in *Balletta v. Spadoni*,

---

[10] The *Daily Beast* Defendants assume for purposes of this motion that Pennsylvania law governs Judge Patrick's claim for false light, because if New York law applied, she would have no claim. *See supra* note 10. However, they reserve the right to invoke defenses, privileges, and immunities conferred by New York law. In that regard, Pennsylvania's "choice of law analysis is issue-specific," such that "different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (citation omitted). Applying this principle would include, for example, consideration of New York's Anti-SLAPP statute, which provides for the recovery of "damages, including costs and attorney's fees" that result from having to defend against a meritless "action involving public petition and participation," N.Y. Civ. Rights Law §§ 70-a(1), 76-a(1)(a), such as "the exercise of the constitutional right of free speech in connection with an issue of public interest," *id.* § 76-a(1)(a)(2). *See also, e.g.*, *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020); *Wood Servs. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 608-10 (E.D. Pa. 2018) (denying in relevant part plaintiff's motion to dismiss defendant's counterclaim under earlier version of New York's Anti-SLAPP statute). The *Daily Beast* Defendants reserve the right to seek recovery of their attorneys' fees incurred in connection with the defense of this action, which may be pursued in a separate "action [or] claim" or in a "cross claim or counterclaim." N.Y. Civ. Rights Law § 70-a(1).

47 A.3d 183 (Pa. Commw. 2012), which emphasized the same point.  *McCafferty*, 955 F.3d at

359 (citing *Balletta*).  There, a number of plaintiffs asserted claims based on an article that

characterized them as "anarchists" and "fellow travelers of antigovernment groups such as the

Sovereign Citizen, Posse Comitatus and Liberty Dollar movements."  *Balletta*, 47 A.3d at 189.

The court held that the statements were non-actionable opinions because "the article fully

disclose[d] the facts upon which" the characterizations of the plaintiffs' ideological or political

affiliations were based.  *Id.* at 199.  The *McCafferty* court also cited *Jones v. City of Phila.*, 73

Pa. D.&C.4th 246, 257 (Phila. C.C.P. May 19, 2005), *aff'd*, 893 A.2d 837, 844-45 (Pa. Commw.

2006), in which the court held that labelling plaintiff as "anti-Semitic" could not support a false

light claim where the facts on which that characterization was based had been disclosed, and

emphasized that such opinions are "absolutely privileged" even when they are "extremely

derogatory."  955 F.3d at 357.

      This analysis applies here with equal force.  The *Daily Beast* article disclosed the basis

for its characterization of Judge Patrick as "QAnon-Linked."  In particular, the article explained

that Judge Patrick was "once allegedly on the speaker's list for a QAnon-linked event," though

she "denied planning to attend."  Compl. Ex. A.  The article further noted that she had sat for "an

interview with supporters of the conspiracy theory," referring to the nearly 45-minute interview

with *Up Front in the Prophetic*, in which Judge Patrick repeatedly called the host "Prophetess"

and in which, when the Prophetess referenced her invitation to attend the group's upcoming

event, Judge Patrick responded, "Yes."  Compl. Ex. A.  Thus, the *Daily Beast* article's

characterization of Judge Patrick as "QAnon-Linked" is a protected opinion based on those

disclosed facts.

      The context of the *Daily Beast* article further supports the conclusion that its

characterization of Judge Patrick is protected opinion.  The article alludes to Judge Patrick's interactions with persons from the QAnon movement in the context of reporting in a critical manner on her ruling in a politically controversial case.  Courts routinely reject claims in which judges complain about criticism of their decision-making on the ground that such criticism constitutes protected opinion.  *See, e.g.*, *Standing Comm. on Discipline of U.S. Dist. Ct. v. Yagman*, 55 F.3d 1430, 1440-41 (9th Cir. 1995) (lawyer's criticisms of judge as "dishonest," "ignorant," "ill-tempered," "buffoon," "sub-standard human," "right-wing fanatic," "bully," and "one of the worst judges in the United States" were statements of opinion); *Dodds v. ABC*, 145 F.3d 1053, 1066-68 (9th Cir. 1998) (statements that judge was "one of the three worst judges in the country" and "unfit" for office are protected opinion); *Rappaport v. VV Publ'g Corp.*, 637 N.Y.S.2d 109, 110 (N.Y. App. Div. 1st Dep't 1996) (statement that judge was "biased" is opinion); *Ferreri v. Plain Dealer Publ'g Co.*, 756 N.E.2d 712, 721 (Ohio Ct. App. 2001) (statements describing judge's conduct as "scandalous," stating he was "beyond the call of reason," and accusing him of "car[ing] a good deal more about himself and his image than children" are protected opinions).

The overall tenor of the *Daily Beast* article further underscores that the description "QAnon-Linked" would be understood as an expression of opinion.  Throughout, the article uses colorful turns of phrase to signal that it is not merely reporting, but also commenting, on the topics at issue.  Examples include the article's references to an "unhinged war" and an "unhinged battle" over the Columbus statue and its sarcastic descriptions of the Friends of Marconi Plaza as "in need of a hobby" and having "taken up the most noble of crusades."  Where, as here, an article includes such signals, readers understand that phrases like these—and "QAnon-Linked"— are properly understood as expressions of opinion, not statements of fact.  *See, e.g.*, *McCafferty*,

955 F.3d at 359 ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)); *Mann v. Abel*, 885 N.E.2d 884, 886 (N.Y. 2008) (explaining that "the tenor of the column, including allegations that Mann was a 'political hatchet Mann' who appeared to 'pull[] the strings,' clearly signals the reader that the piece is likely to be opinion, not fact").

The bottom line is that, while Judge Patrick may disagree that her undisputed interactions with persons affiliated with the QAnon movement warrant the characterization of her as "QAnon-Linked," her disagreement with the *Daily Beast* Defendants' choice of words cannot override their right to characterize the disclosed facts in this way. Those who run for and hold public office are routinely subject to expressions of opinion by the press and public. Judge Patrick cannot premise a false light claim on critical speech about her ideological affiliations and controversial judicial rulings, as they are at the heart of the constitutional protection for expressions of opinion.

**B.     The *Daily Beast* Article Provides an Accurate Account of Judge Patrick's Interactions with the QAnon Movement.**

Even assuming that characterizing Judge Patrick as "QAnon-Linked" could somehow be understood as a statement of fact—rather than a protected expression of opinion—the article would be non-actionable for the separate reason that the article's description of her is substantially true. There is no question that Judge Patrick had publicly welcomed the support of people known to be affiliated with the QAnon movement and was open to attending, as a sitting judge running for election to the state's highest court, a QAnon-affiliated conference for which she was on the speakers list. Indeed, her interview with the Prophetess ended with one of her

campaign promotional videos, further underscoring a "link" to the movement.  To summarize

that set of facts, or to characterize her as having "links" to QAnon, is entirely accurate.  That

Judge Patrick later found it necessary or expedient to disavow the connection cannot negate the

fact that there was such a "link."

As a threshold matter, "in Pennsylvania, falsity means the same thing for false light as it

does for defamation."  *McCafferty*, 944 F.3d at 360.  That is, a false light claim requires a

"highly offensive *false* statement."  *Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. 1993)

(emphasis added).  Thus, a false light plaintiff must adequately "allege[] a falsity" to state a

claim.  *Jones*, 893 A.2d at 844-45 (affirming order sustaining preliminary objections on false

light claim based on failure to satisfy "the falsity element"); *see also Dowling v. Phila.

Newspapers, Inc.*, 1995 Phila. Cty. Rptr. LEXIS 13, at **24 (Phila. C.C.P. Feb. 6, 1995)

(dismissing false light claim because challenged news report was substantially true), *aff'd*, 665

A.2d 1304 (Pa. Super. 1995).  As the Pennsylvania Superior Court explained in the analogous

defamation context, "[t]he law does not require perfect truth, so long as any inaccuracies do not

render the substance and 'gist' of the statements untrue."  *ToDay's Hous. v. Times Shamrock

Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa. Super. 2011).  Thus, a plaintiff cannot state a claim

where the "gist" or "sting" of the challenged statement is substantially true, and a "statement is

not considered false unless it 'would have a different effect on the mind of the reader from that

which the pleaded truth would have produced.'"  *Masson v. New Yorker Magazine, Inc.*, 501

U.S. 496, 516-17 (1991) (citation omitted).

Judge Patrick has not alleged *any* facts contradicting her *links* to QAnon as accurately

described in the *Daily Beast* article and the articles to which it hyperlinks, *see supra* note 7.  In

particular, the *Daily Beast* article accurately states, and Judge Patrick does not dispute, that she

participated in "an interview with supporters of the [QAnon] conspiracy theory," and that she "was once allegedly on the speaker's list for a QAnon-linked event."  Compl. Ex. A.  Judge Patrick also has not taken issue with *The Inquirer*'s reporting that the website of "Up Front in the Prophetic," the organization that interviewed her, is "full of references to QAnon and the PizzaGate conspiracy theory that emerged during the 2016 campaign that Hillary Clinton and her associates were running a child sex-trafficking ring out of a pizza shop in Washington."  *See* Ex. 1 (Pa. C.P. Compl. Ex. B).  Nor does she dispute that she consulted with Prophet Mark Taylor, a prominent QAnon leader, *id.*, or that her campaign video played at the end of her interview with the Prophetess.

Judge Patrick's core contention appears to be that the *Daily Beast* article's characterization of her as having a link to QAnon is false because she ultimately denied it—*i.e.*, because she *says* it is false.  But the article accurately reports her denials as well.  Compl. Ex. A. In any event, the Superior Court's analysis in *Santillo* makes clear that Judge Patrick cannot base a false light claim on her mere denial of connections to QAnon or its supporters.  In that case, a former police officer who had run for the office of district justice in Montgomery County asserted a false light claim based on reporting about an incident in which he had been accused of making unwanted sexual advances toward a teenager.  634 A.2d at 265.  The incident was ultimately resolved when the girl's mother agreed not to press charges or sue if the officer resigned from the police force.  *Id.*  In his lawsuit, the plaintiff did not dispute the reported facts regarding the incident.  *Id.* at 266-67.  He nonetheless insisted that he had been cast in a false light because, when representatives of his police department discussed in the article his resignation from the police force, no mention was made of the fact that he "also received commendations as a police officer."  *Id.* at 267.  The court rejected that argument, holding, as

relevant here, that a false light claim cannot be premised simply on a defendant's decision not to recount the facts in a manner that would have cast the plaintiff in a better light. *Id.*

The same reasoning applies here. The *Daily Beast* Defendants' editorial decisions, in describing a QAnon link while also accurately reporting that Judge Patrick opted not to attend the conference, cannot support a false light claim. As Judge Patrick told *The Inquirer*, perhaps she should have been "more diligent" and "investigated more" before engaging with fringe conspiracy theorists if she did not wish to be accurately "linked" to them. *See* Ex. 1 (Pa. C.P. Compl. Ex. B). But where, as here, those facts are accurately reported, there is no falsity. While, like the police officer in *Santillo*, Judge Patrick might have preferred to have been cast in a *better* light, she has no claim that she was cast in a *false* light.

### C.   Judge Patrick Does Not and Cannot Plead That the *Daily Beast* Defendants Published the Article with Actual Malice.

Judge Patrick is required under Pennsylvania law and the First Amendment to plead facts that, if proven, would establish by clear and convincing evidence that the *Daily Beast* Defendants published the challenged statement with actual malice, *i.e.*, that they either *knew* their statements were false or that they had a high degree of awareness that the statements were probably false, yet published anyway. *McCafferty*, 955 F.3d at 360 (dismissing false light claim for failure to plead actual malice). Because Judge Patrick has not—and cannot—do so here, her false light claim against the *Daily Beast* Defendants fails as a matter of law for this reason as well.

To prevail on a false light claim, a plaintiff must show that the publisher of the alleged falsehood acted "with knowledge or in reckless disregard" of the falsity of the matter at issue. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citing RESTATEMENT (SECOND) OF TORTS § 652E (1979)). This is identical to the well-known "actual malice" standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which governs defamation claims brought

by public officials like Judge Patrick.  *See, e.g.*, *Coleman v. Ogden Newspapers, Inc.*, 142 A.3d

898, 905-06 (Pa. Super. 2016) (false light claim requires same showing of actual malice as

applies to public-figure defamation claims); *Sprague*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at

*69-70 ("Just as with claims for defamation, a false-light tort incorporates the First

Amendment's constitutional protections set forth in *New York Times v. Sullivan* and its

progeny.") (internal marks omitted).

Significantly, the actual malice "standard is a subjective one, based on the defendant's

actual state of mind."  *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988).

For there to be actual malice, the defendant must have "*actually* doubt[ed] the veracity of the

article."  *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (citation omitted).  Thus,

"reckless disregard" of the truth cannot be equated with "recklessness" in the more familiar sense

of an "extreme departure from professional standards."  *Tucker v. Fischbein*, 237 F.3d 275, 286

(3d Cir. 2001).  Indeed, an alleged departure from standard journalistic practices is insufficient to

establish actual malice, *id.*, as the law is "clear that reckless conduct [under the *Sullivan*

standard] is not measured by whether a reasonably prudent man would have published, or would

have investigated before publishing."  *St. Amant v. Thompson*, 390 U.S. 727, 730-31 (1968).  In

addition, the concept of actual malice "should not be confused with the concept of malice as an

evil intent or a motive arising from spite or ill will."  *Masson*, 501 U.S. at 510.  As the Third

Circuit has instructed, "'neither . . . ill will, bias, spite, nor prejudice . . .  [is] sufficient to

establish either a knowledge of the falsity of, or a reckless disregard of, the truth or falsity of the

materials used.'"  *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir.

1994).

Under the pleading rules established by the Supreme Court, when actual malice is an

element of a claim, a plaintiff is required to plead more than "actual-malice buzzwords." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012); *see also Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 289 (E.D. Pa. 2016) ("[M]erely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations."). Rather, the plaintiff must plead enough facts to "show that the existence of actual malice is plausible on its face." *Earley v. Gatehouse Media Pa. Holdings, Inc.*, 2015 U.S. Dist. LEXIS 31065, at *5-6 (M.D. Pa. Mar. 13, 2015) (citation and internal quotation marks omitted). When a plaintiff fails to meet this requirement, such as when a complaint's allegations "rise to no more than professional negligence," the claims must be dismissed. *Lee*, 710 F. App'x at 560 (affirming Rule 12(b)(6) dismissal of defamation claim for, *inter alia*, failure to plausibly plead actual malice).[11]

Judge Patrick attempts to plead actual malice in various ways. Each is insufficient as a matter of law. First, Judge Patrick asserts, in conclusory fashion, that the *Daily Beast* Defendants acted "malicious[ly]" or "reckless[ly]" or published a "knowingly false" or "intentionally misleading" statement. Compl. ¶¶ 6, 22, 26, 28. These rote incantations of the actual malice standard, however, are insufficient. *See, e.g.*, *McCafferty*, 955 F.3d at 360

---

[11] *See also, e.g.*, *Michel v. NYP Holdings, Inc*., 816 F.3d 686, 702 (11th Cir. 2016) (affirming dismissal of defamation claim where plaintiff failed to adequately plead actual malice and noting that "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"); *Tah v. Global Witness Publ'g, Inc*., 991 F.3d 231, 243 (D.C. Cir. 2021); *Nelson Auto Ctr. v. Multimedia Holdings Corp*., 951 F.3d 952, 958 (8th Cir. 2020); *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 745 (5th Cir. 2019); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012); *Schatz*, 669 F.3d at 58; *see also Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020) (defamation plaintiff failed to make plausible allegation of actual malice necessary to overcome state-law qualified privilege).

(affirming dismissal of false light claim for failure to plead *facts* that would establish actual malice).

Next, Judge Patrick accuses the *Daily Beast* Defendants of having "made no attempt to confirm this alleged Q'Anon 'link' to Judge Patrick."  Compl. ¶ 23.  Leaving aside that this allegation is flatly contradicted by the *Daily Beast* article itself (which included multiple hyperlinks to prior news reports by reputable news organizations and ample documentation of Judge Patrick's links to QAnon), it is well established that pleading a failure to investigate, without more, will not support a claim of actual malice.  *St. Amant*, 390 U.S. at 731 (actual malice is "not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing"); *Coleman*, 142 A.3d at 910 ("the fact that Defendants did not contact the sources referenced in the affidavit does not constitute evidence that Defendants entertained serious doubts about the truthfulness of the information").  Accordingly, Judge Patrick's accusation that the *Daily Beast* Defendants failed to take proper steps to confirm her links to QAnon, even accepted as true despite the confirmatory steps described in the article itself, is inadequate to properly plead actual malice.

Judge Patrick further contends that the *Daily Beast* Defendants acted with improper motives, asserting that the article was published "to harm Judge Patrick, whose politics apparently do not align with those of the *Daily Beast* Defendants."  Compl. ¶ 6.  This gross mischaracterization of the *Daily Beast* Defendants' journalistic motivations, even if proven, would not be sufficient to support a finding of actual malice.  That is because the actual malice standard "is not met through a showing of ill will or malice in the ordinary sense."  *Joseph v. Scranton Times LP*, 129 A.3d 404, 436-37 (Pa. 2015).  As the Superior Court has observed, "[a]ctual malice focuses on the defendant's attitude toward the *truth*, whereas common law

malice focuses on the defendant's attitude toward the *plaintiff*." *DeMary v. Latrobe Printing & Publ'g Co.*, 762 A.2d 758, 764 (Pa. Super. 2000) (emphasis added). Accordingly, even evidence that a defendant "had a 'vendetta'" and was "'obsessed' with seeking retribution" against the plaintiff cannot support a finding of actual malice. *Sprague v. Walter*, 516 A.2d 706, 725 n.18 (Pa. Super. 1986); *accord Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016) ("the mere presence of some ulterior motive—[including] a personal desire to harm the subject of a story—is not enough to support a finding of actual malice"). Moreover, here the *Daily Beast* article fairly and accurately reported that Judge Patrick "denied that she ever planned to attend a QAnon-affiliated event" and said "she had no idea why she was listed as a speaker." Compl. Ex. A. In short, Judge Patrick cannot allege actual malice simply by asserting that the *Daily Beast* Defendants harbored ill will toward her.

Finally, Judge Patrick blames the *Daily Beast* for relying on "the *Inquirer*'s flawed reporting to further its own agenda and malign Judge Patrick." Compl. ¶ 21. But this allegation turns the actual malice inquiry on its head. The *Daily Beast*'s reliance on *The Inquirer* and other reputable news sources actually *forecloses* a finding of actual malice. *See supra* note 7. Indeed, the Third Circuit has held that a magazine's reliance on an earlier article in *The Inquirer* defeated the plaintiff's attempt to show actual malice. *See, e.g.*, *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1090 (3d Cir. 1985) (reliance on prior "newspaper article" means that "we cannot say the whole story is a fabrication or a product of the author's imagination"). In another case, the Third Circuit affirmed a district court's award of summary judgment to *Time* magazine, holding the plaintiff could not possibly establish actual malice where "the [challenged] article was clearly derived in large part from previously published articles and did not change the import of those articles in any material way." *Tucker*, 237 F.3d at 287; *accord McDowell v.*

*Paiewonsky*, 769 F.2d 942, 951 (3d Cir. 1985) (holding plaintiff failed to adduce evidence of actual malice where "defendant relied on the official reports and news accounts of the various construction projects").  Accordingly, the hyperlinks in the *Daily Beast* article, which demonstrate its reliance on reputable news sources, affirmatively foreclose a finding that the article was published with actual malice.

In sum, Judge Patrick's false light claim against the *Daily Beast* Defendants should be dismissed for the additional independent reason that she cannot allege that they published the *Daily Beast* article with actual malice.

## CONCLUSION

For the foregoing reasons, the *Daily Beast* Defendants respectfully request that the Court dismiss Plaintiff's claims against them with prejudice, and grant such other relief as it deems appropriate.

Dated:  June 17, 2022                          Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Kaitlin M. Gurney*
_____
    Kaitlin M. Gurney
    Leslie Minora
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  (215) 665-8500
F:  (215) 864-8999
gurneyk@ballardspahr.com
minoral@ballardspahr.com

Seth D. Berlin (*pro hac vice forthcoming*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
T:  (202) 508-1122
F:  (202) 661-2299
berlins@ballardspahr.com

*Counsel for Defendants The Daily Beast*
*Company LLC and Laura Bradley*