IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| HONORABLE PAULA A. PATRICK, | : |
| Plaintiff, | : |
| v. | : **CIVIL ACTION NO. 2:22-cv-01520** |
| THE DAILY BEAST COMPANY LLC, *et al.*, | : |
| Defendants. | : |

---

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS BY <u>DEFENDANTS THE DAILY BEAST COMPANY LLC AND LAURA BRADLEY</u>

BALLARD SPAHR LLP

Kaitlin M. Gurney
Leslie Minora
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  (215) 665-8500
F:  (215) 864-8999
gurneyk@ballardspahr.com
minoral@ballardspahr.com

Seth D. Berlin (*admitted pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
T:  (202) 508-1122
F:  (202) 661-2299
berlins@ballardspahr.com

*Counsel for Defendants The Daily Beast Company LLC and Laura Bradley*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................3

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER THE DAILY
        BEAST DEFENDANTS.........................................................................................3

        A.      Judge Patrick Concedes There Is No Personal Jurisdiction Over
                Defendant Laura Bradley........................................................................3

        B.      There Is No Basis To Exercise Jurisdiction Over The Daily Beast ........................4

II.     JUDGE PATRICK'S FALSE LIGHT CLAIM SHOULD BE DISMISSED
        AS A MATTER OF LAW .....................................................................................8

        A.      Judge Patrick's Procedural Objections Are Without Merit ....................................9

        B.      Judge Patrick's Strained Reading Of The Daily Beast Article Is
                Foreclosed By Its Text And Would Be Protected Opinion In Any Event ............11

        C.      Judge Patrick Has Not Plausibly Alleged Actual Malice .....................................15

CONCLUSION...........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
973 F. Supp. 2d 467 (S.D.N.Y. 2013)........................................................17

*Balletta v. Spadoni*,
47 A.3d 183 (Pa. Commw. 2012) .............................................................13

*Beverly Enterprises, Inc. v. Trump*,
182 F.3d 183 (3d Cir. 1999)......................................................................12

*Bogash v. Elkins*,
176 A.2d 677 (Pa. 1962) ...........................................................................13

*Buckley v. Littell*,
539 F.2d 882 (2d Cir. 1976).......................................................................13

*Calder v. Jones*,
465 U.S. 783 (1984)...................................................................................7

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ...................................................................9

*Earley v. Gatehouse Media Penn. Holdings, Inc.*,
2015 U.S. Dist. LEXIS 31065 (M.D. Pa. Mar. 13, 2015).........................18

*Edwards v. Detroit News, Inc.*,
322 Mich. App. 1 (Mich. 1st Dist. 2017)..................................................14

*Egiazaryan v. Zalmayev*,
880 F. Supp. 2d 494 (S.D.N.Y 2012)........................................................14

*First Lehigh Bank v. Cowen*,
700 A.2d 498 (Pa. Super. 1997).................................................................10

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
141 S. Ct. 1017 (2021)............................................................................1, 4

*Goldfarb v. Kalodimos*,
539 F. Supp. 3d 435 (E.D. Pa. 2021) ........................................................8

*Gorman v. Jacobs*,
597 F. Supp. 2d 541 (E.D. Pa. 2009) ........................................................7

*Guilford Transportation Industry v. Wilner*,
    760 A.2d 580 (D.C. 2000) ...................................................................................14

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ....................................................................1, 5, 6, 8

*Jenkins v. KYW*,
    829 F.2d 403 (3d Cir. 1987)..............................................................................3, 14

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...........................................................................1, 5, 6

*Kendall v. Daily News Publishing Co.*,
    716 F.3d 82 (3d Cir. 2013)....................................................................................18

*Kerrigan v. Otsuka America Pharmaceutical, Inc.*,
    560 F. App'x 162 (3d Cir. 2014) ...........................................................................9

*Krajewski v. Gusoff*,
    53 A.3d 793 (Pa. Super. 2012)..............................................................................15

*Lee v. TMZ Productions Inc.*,
    710 F. App'x 551 (3d Cir. 2017) ...........................................................................9

*Libre By Nexus v. Buzzfeed, Inc.*,
    311 F. Supp. 3d 149 (D.D.C. 2018) ......................................................................9

*Livingston v. Murray*,
    612 A.2d 443 (Pa. Super. 1992)............................................................................12

*Marcone v. Penthouse International Magazine for Men*,
    754 F.2d 1072 (3d Cir. 1985)..........................................................................12, 17

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)...................................................................................7

*McCafferty v. Newsweek Media Group, Ltd.*,
    955 F.3d 352 (3d Cir. 2020)......................................................................... *passim*

*In re NAHC, Inc. Securities Litigation*,
    306 F.3d 1314 (3d Cir. 2002)...............................................................................10

*Nunes v. NBCUniversal Media, LLC*,
    2022 U.S. Dist. LEXIS 16164 (E.D. Tex. Jan. 28, 2022)......................................6

*Pace v. Baker-White*,
    432 F. Supp. 3d 495 (E.D. Pa. 2020) ..............................................................16, 17

*Price v. Viking Penguin*,
881 F.2d 1426 (8th Cir. 1989) ...........................................................15

*Rapaport v. Interstate General Media, LLC*,
99 A.3d 528 (Pa. 2014) ....................................................................15

*Reilly v. WNEP*,
2021 Pa. Super. Unpub. LEXIS 734 (Pa. Super. Mar. 17, 2021) ...........................13

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000) ...............................................................18

*Sprague v. ABA*,
2001 U.S. Dist. LEXIS 18707 (E.D. Pa. Nov. 14, 2001) .......................................15

*Thomas Merton Center v. Rockwell International Corp.*,
442 A.2d 213 (Pa. 1981) ...................................................................12

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ..................................................................3

*West Penn Allegheny Health System v. UPMC*,
2009 U.S. Dist. LEXIS 100935 (W.D. Pa. Oct. 29, 2009) ......................................10

*Walden v. Fiore*,
571 U. S. 277 (2014) ..........................................................................4

*Walker v. Lindy Property Management Co.*,
2021 U.S. Dist. LEXIS 18160 (E.D. Pa. Jan. 29, 2021) .........................................4

*Warkevicz v. Berwick Area School District*,
2016 U.S. Dist. LEXIS 91374 (M.D. Pa. July 14, 2016) .........................................9

*Williams v. Roc Nation, LLC*,
2020 U.S. Dist. LEXIS 195173 (E.D. Pa. Oct. 21, 2020) .....................................7, 8

*Young v. New Haven Advocate*,
315 F.3d 256 (4th Cir. 2002) .................................................................4

*Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*,
836 F.2d 173 (3d Cir. 1987) .................................................................11

## Other Authorities

Federal Rule of Civil Procedure 56 .........................................................11

Federal Rule of Evidence 201 ..............................................................10

Defendants, The Daily Beast Company LLC ("The Daily Beast") and Laura Bradley (collectively, "the *Daily Beast* Defendants"), respectfully submit this reply brief in support of their motion to dismiss for lack of personal jurisdiction and for failure to state a claim.

## INTRODUCTION

Judge Patrick's Response in Opposition ("Resp.") to Defendants' motion to dismiss simply fails to acknowledge recent and controlling Third Circuit authorities that compel this action's dismissal both for lack of personal jurisdiction and for failure to state a claim.

With respect to personal jurisdiction, her response ignores *Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021). *Hepp* applied the U.S. Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), the centerpiece of Judge Patrick's jurisdictional argument, in the precise circumstances at issue here: a tort case against out-of-state online content providers.  In finding jurisdiction *lacking*, the Third Circuit rejected the principal argument advanced by Judge Patrick, namely, that advertising revenue derived from Pennsylvania is sufficient to establish personal jurisdiction.  *See Hepp*, 14 F.4th at 208 (allegation that defendants "targeted their advertising business to Pennsylvania" was too "weak" a connection to sustain personal jurisdiction in Pennsylvania where claim did not arise out of those advertisements); *see also Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (same).

So too here.  Because Judge Patrick's false light claim arises out of a news article and not an advertisement, the alleged Pennsylvania advertising-related "contacts do not relate to this litigation," or "establish the strong connection present in *Ford Motor*."  *Hepp*, 14 F.4th at 208. The other cases she relies on to establish jurisdiction similarly do not involve online publishers— and she ignores the substantial body of authority that actually does so.  She thus has failed to meet her burden of establishing personal jurisdiction, and her Complaint should be dismissed.

Turning to the merits, Judge Patrick's response sidesteps *McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352 (3d Cir. 2020), even though it was cited eleven times in the *Daily Beast* Defendants' opening brief and Judge Patrick's counsel represented the plaintiff in that case.  Observing that "[p]olitical discourse can be bruising," the Third Circuit affirmed a Rule 12(b)(6) dismissal of a political activist's false light claim on the same grounds that the *Daily Beast* Defendants advance here.  Specifically, dismissal was warranted because the challenged article contained "opinions based only on disclosed facts," and the complaint did not "plead facts showing actual malice, which the First Amendment requires of those who step into the political spotlight."  *Id.* at 355.

Instead of reckoning with *McCafferty*, or arguing that "QAnon-linked" is actionable standing alone, Judge Patrick instead alleges, for the first time in her Response, that the article *implies* that she is a *member* of QAnon, Resp. at 15-16, and not simply "linked" to the group through her YouTube interview with a QAnon "Prophetess," campaign help from a QAnon "Prophet," and appearance on a list of speakers for a QAnon conference.  But the plain text of the article flatly negates such an implication: it expressly reports her "denial that she ever planned to attend a QAnon-affiliated event," states that "she told the *Inquirer* she had no idea why she was listed as a speaker," and describes her interviewers—but not her—as "supporters of the conspiracy theory."  Compl. Ex. A (Dkt. 1-1).  Moreover, *even if* the *Daily Beast* Defendants had somehow implied that Judge Patrick was not just "linked" to QAnon but was herself an adherent, *McCafferty*—along with a host of other authorities—still compels dismissal, as mere descriptions of "political philosophy," such as being a "spokesperson" for the "hard right," are non-actionable "opinions based on disclosed facts."  955 F.3d at 358.  And, to the extent that Judge Patrick now contends that the *Daily Beast* article implies her "link" to (or alleged membership in) QAnon tainted her judicial decision-making about the Columbus statue, the

Third Circuit has similarly held that critiques of judicial decisions are protected opinions.  *See*

*Jenkins v. KYW*, 829 F.2d 403, 406 (3d Cir. 1987).

     *McCafferty* likewise forecloses Judge Patrick's argument that her Complaint adequately

pleads actual malice because Ms. Bradley "did no independent work on the story, but relied

solely on other stories."  Resp. at 21.  Applying settled law, the Third Circuit explained that

alleging a "failure to investigate" falls "well short of actual malice."  *McCafferty*, 955 F.3d at

359.  And contrary to Judge Patrick's allegation that the hyperlinked news sources provide no

"basis" for the phrase "QAnon-linked," Resp. at 21, the *Daily Beast* article's very first hyperlink

is to a *Philadelphia Inquirer* article—which Judge Patrick has never challenged—reporting that

she had been slated to speak at a conference "*linked to* the *QAnon conspiracy theory*" (emphases

added).[1]  Because the *Daily Beast* article "was clearly derived . . . from previously published

articles," which *forecloses* a finding of actual malice, *Tucker v. Fischbein*, 237 F.3d 275, 286-87

(3d Cir. 2001), Judge Patrick has not, and cannot, "plead facts showing actual malice," and her

Complaint should be dismissed for this reason as well.  *McCafferty*, 955 F.3d at 35.

## ARGUMENT

I.    **THIS COURT LACKS PERSONAL JURISDICTION
    OVER THE DAILY BEAST DEFENDANTS.**

    A.    **Judge Patrick Concedes There Is No Personal Jurisdiction
        Over Defendant Laura Bradley.**

    Judge Patrick focuses her jurisdictional arguments exclusively on The Daily Beast and

does not address personal jurisdiction over Defendant Laura Bradley, who does not recall having

ever visited Pennsylvania.  Bradley Decl. ¶¶ 4-5 (Dkt. 4-11).  Because Judge Patrick has

---

    [1] *See* Laura McCrystal and Sean Collins Walsh, *A judge ordered Philadelphia to remove the plywood box covering the Christopher Columbus statue in Marconi Plaza*, The Philadelphia Inquirer (Oct. 9, 2021), https://www.inquirer.com/news/columbus-statue-south-philly-marconi-plaza-20211008.html.

conceded the issue, the Court should dismiss Ms. Bradley for lack of personal jurisdiction.  *See,*

*e.g.*, *Walker v. Lindy Prop. Mgmt. Co.*, 2021 U.S. Dist. LEXIS 18160, at *7 (E.D. Pa. Jan. 29,

2021) ("'Plaintiff makes no response to this argument, and thus has waived [her] opportunity to

contest it'") (quoting *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003)).

>   **B.**     **There Is No Basis To Exercise Jurisdiction Over The Daily Beast.**

Judge Patrick does not dispute, and therefore concedes, that there is no basis to establish

general jurisdiction over The Daily Beast.  *Id.*

Turning to specific jurisdiction, Judge Patrick does not meaningfully address the

substantial body of law rejecting efforts to exercise personal jurisdiction over a generally

accessible Internet publication, even where an article is about a person or event in the forum

state.  *See, e.g.*, *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002)

(Connecticut-based newspapers "did not manifest an intent to aim their websites or the posted

articles at a Virginia audience" even though articles concerned a Virginia prison warden); Defs.'

Mem. at 17-18 (Dkt. 4-1) (citing additional cases decided over the past two decades reaching

same conclusion).  Instead, Judge Patrick relies almost exclusively on the U.S. Supreme Court's

decision in *Ford Motor*, arguing that advertising revenue derived from Pennsylvania is

"substantial business" that warrants exercising personal jurisdiction over The Daily Beast.  Resp.

at 6-9 (citing *Ford Motor*, 141 S. Ct. at 1025-26).

As an initial matter, as Judge Patrick concedes, *Ford Motor* "itself noted that some types

of cases, including those involving internet transactions, may present unique issues unresolved

by its holding."  Resp. at 9 (citation omitted).  Indeed, the Court explained in *Ford Motor* that

"we do not here consider internet transactions, which may raise doctrinal questions of their

own." 141 S. Ct. at 1028 n.4; *see also Walden v. Fiore*, 571 U. S. 277, 290 n.9 (2014) ("[T]his

case does not present the very different questions whether and how a defendant's virtual

'presence' and conduct translate into 'contacts' with a particular State"). Put differently, the Court emphasized that it did not intend its ruling to upend the already-then-substantial body of law governing jurisdiction over Internet websites.

But lest there be any doubt, later cases—including *Hepp*—apply *Ford Motor* to *reject* the exercise of personal jurisdiction over online publishers, even if they sell or derive revenue from advertising or merchandise in the forum state, so long as the claim at issue does not arise from those sales. In *Hepp*, the online forum Reddit and the online photo sharing website Imgur challenged this Court's jurisdiction over them in a case alleging misappropriation of the plaintiff's likeness in online advertisements. 14 F.4th at 206-07. Outlining the test set forth in *Ford Motor*, the Third Circuit explained that, to exercise specific personal jurisdiction, (1) there must be "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state," and (2) "the contacts must give rise to—or relate to— plaintiff's claims." *Id.* at 207 (citing *Ford Motor*, 141 S. Ct. at 1024-25). *Hepp* distinguished Ford's contacts with the forum states, which the Court of Appeals said were "legion," noting that the company "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 208. In contrast, even though Reddit and Imgur both derived revenue from Pennsylvania advertising, and Imgur sold merchandise in Pennsylvania, the Third Circuit held that "the alleged misappropriation does not relate to any of th[ose] contacts" and dismissed the two online publishers for lack of personal jurisdiction. *Id.*

The Fifth Circuit's decision in *Johnson*, 21 F.4th 314, likewise applied *Ford Motor* to dismiss defamation claims against the online news website *The Huffington Post* for lack of personal jurisdiction where an article had described a Texas-based plaintiff as "a white nationalist and a Holocaust denier." Like the *Daily Beast* article at issue here, *The Huffington*

*Post* article was accessible in Texas and accompanied by online advertisements; the publication also sold merchandise to Texans. *Id.* at 317. Unlike the strong connection between the forum state and the vehicles that caused the accidents at issue in *Ford Motor*, the Fifth Circuit explained:

> The only relevant activities of the defendant are those that relate to the plaintiff's suit. That crucial link is missing here. Johnson contends that HuffPost's unrelated activities—selling merch and showing ads to every visitor—can support personal jurisdiction over HuffPost with respect to his libel claim. That, *Ford Motor* shows, is a bridge too far.

*Id.* at 325. The court emphasized that, "even if [these] acts did target Texas, neither relates to Johnson's claim, so neither supports specific jurisdiction." *Id.* at 326.

*Hepp* and *Johnson*—applying *Ford Motor* in the precise circumstances of Judge Patrick's claim—mandate dismissal of her case for lack of jurisdiction. Without a connection between the challenged article and The Daily Beast's advertising revenue attributable to Pennsylvania, *Hepp* dictates that the "relationship among the defendant, the forum, and the litigation" is simply "too weak." *Hepp*, 14 F.4th at 208. Nor could Pennsylvanians' online readership suffice to supply that "crucial link," because "clicks, visits, and views from forum residents cannot alone show purposeful availment. They are not evidence that the *defendant* has formed a contact with the forum state." *Johnson*, 21 F.4th at 325 (internal marks omitted); *see also Hepp*, 14 F.4th at 208 (Reddit's online community in Philadelphia insufficient to establish personal jurisdiction); *Nunes v. NBCUniversal Media, LLC*, 2022 U.S. Dist. LEXIS 16164, at *20-21 (E.D. Tex. Jan. 28, 2022) ("Nunes asks this Court to hale NBCU into Texas because some of his Texas supporters may have viewed the nationally-broadcast Report. But those views—if they exist—reflect only [NBCU's] universal accessibility, not its purposeful availment of Texas.") (internal citations omitted).

Judge Patrick's other efforts to avoid this controlling body of authority fare no better.
First, she invokes the so-called "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984),
which involved jurisdiction in California over a print publication distributed in California.  Resp.
at 10.  But she ignores that most of the Internet jurisdiction cases discuss *Calder* but nevertheless
conclude that simply publishing online content about a forum resident, with effects felt in the
forum, is insufficient.  *See, e.g.*, *Marten v. Godwin*, 499 F.3d 290, 299 n.4 (3d Cir. 2007) (cited
in Resp. at 10-13) (explaining that "*Calder* requires more than a finding that the harm caused by
the defendant's intentional tort is primarily felt within the forum" and affirming dismissal of
defamation claim for lack of jurisdiction because defendants' conduct was not "expressly aimed"
at Pennsylvania); *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 546-47 (E.D. Pa. 2009) (cited in Resp.
at 9-10) (to establish jurisdiction, conduct must be "expressly aimed" or "purposefully directed"
at forum state and "plaintiff's claim must arise out of or relate to at least one of those specific
activities") (citing *Calder* and *Marten*, respectively).[2]

Second, there are significant differences between The Daily Beast's conduct and the
defendants' activities in two additional cases relied upon by Judge Patrick.  Resp. at 10-13
(discussing *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435 (E.D. Pa. 2021), and *Williams v. Roc*

---

[2] Consistent with Supreme Court precedent, the Third Circuit in *Marten* concluded that considerations of "fair play and substantial justice" also weighed against exercising jurisdiction based on the effects that the Kansas-based defendants' conduct purportedly had in Pennsylvania. 499 F.3d at 296, 299.  For her part, Judge Patrick asserts that the *Daily Beast* Defendants' New York-based conduct caused her injury in Pennsylvania, which "places reputational interests on the highest plane."  Resp. at 1-2 n.1.  But she fails to explain how considerations of "fair play and substantial justice" would allow her to sue The Daily Beast based on a "false light" theory in Pennsylvania, when New York—the state where the publisher is "at home"—does not recognize that tort.  *See* Defs.' Mem. at 18 n.9.  In fact, New York is so protective of the speech of its citizens and its press that it recently enacted an expanded Anti-SLAPP statute to immunize them from having to defend against actions involving "the exercise of the constitutional right of free speech in connection with an issue of public interest," such as this one.  *Id*. at 20 n.10.

*Nation, LLC*, 2020 U.S. Dist. LEXIS 195173, at *8 (E.D. Pa. Oct. 21, 2020)).  In both of those

cases, the challenged speech arose from the defendant's conduct *within* Pennsylvania.  *See*

*Goldfarb*, 539 F. Supp. 3d at 453 (finding jurisdiction where "Defendant wrote his Tweets based

on knowledge and information he ascertained while attending a class in-person at a University in

the forum state"); *Williams*, 2020 U.S. Dist. LEXIS 195173, at *8 (finding jurisdiction where

"Defendants filmed the documentary largely in and around the city, and the series contains

multiple interviews with Philadelphia residents").  Here, in contrast, the article was drafted and

published in New York for a national audience, without any conduct in Pennsylvania.  Libby

Decl. ¶¶ 4, 10 (Dkt. 4-12); Bradley Decl. ¶¶ 4-10.  The Complaint itself avers that Defendant

Bradley, who cannot recall having ever visited the Commonwealth, Bradley Decl. ¶ 4, made no

telephone calls to anyone in Pennsylvania, sent no emails to anyone in Pennsylvania, conducted

no interviews in Pennsylvania, and had no other contact with Pennsylvania in connection with

the preparation of the article, *id.* ¶¶ 8, 9; Compl. ¶ 23.  Thus, the circumstances here are

decidedly different from the conduct at issue in *Goldfarb* and *Williams*, where the defendants'

in-person activities in Pennsylvania formed the basis for exercising jurisdiction.

Ultimately, *Hepp* and the long line of other cases involving jurisdiction over Internet

publishers are controlling in this case, and none of Judge Patrick's arguments alters that result.

Because she has failed to meet her burden of establishing personal jurisdiction over either

defendant, the case should be dismissed.

## II.     <u>JUDGE PATRICK'S FALSE LIGHT CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW.</u>

Rather than addressing controlling authority like *McCafferty*, Judge Patrick proffers two

lines of argument in a futile attempt to avoid dismissal.  First, she advances procedural

objections to adjudicating the issues raised by the *Daily Beast* Defendants' motion to dismiss and

taking judicial notice of publicly-available records whose accuracy and authenticity she does not challenge.  Second, she asserts, for the first time, that phrase "QAnon-Linked" conveys two new defamatory implications about her.  As explained below, her arguments are meritless.

### A.      Judge Patrick's Procedural Objections Are Without Merit.

*First*, Judge Patrick argues that it is improper for this Court to adjudicate issues like opinion, falsity, and actual malice on a motion to dismiss.  *See, e.g.*, Resp. at 2-3 (assailing defendants for prematurely inviting this Court "to decide, at this incipient case juncture, the issue of truth or falsity as a matter of law").  But the three issues raised by the *Daily Beast* Defendants are all properly adjudicated at the pleadings stage, including:

(a)   whether a statement is one of fact or opinion, *see, e.g.*, *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014) (affirming order granting motion to dismiss on opinion grounds); *Warkevicz v. Berwick Area Sch. Dist.*, 2016 U.S. Dist. LEXIS 91374, at *14–15 (M.D. Pa. July 14, 2016) (granting motion to dismiss false light claim on opinion grounds);

(b)   whether a statement is plausibly alleged to be false, *see, e.g.*, *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (affirming Rule 12(b)(6) dismissal where court found "[e]verything in these statements is true"); *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155-58 (D.D.C. 2018) (dismissing claim because statement was not "plausibly false" given factual allegations of complaint and document hyperlinked in article); and

(c)   whether a public official plaintiff like Judge Patrick has adequately pled actual malice, *see, e.g.*, *McCafferty*, 955 F.3d at 360 (affirming dismissal of false light claim for failing to properly plead actual malice); *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (affirming Rule 12(b)(6) dismissal of defamation claim for,

*inter alia*, failing to plausibly plead actual malice); *see also* Defs.' Mem. at 28 n.11

(citing cases reaching same conclusion from every circuit to consider the issue).[3]

**Second**, Judge Patrick objects to the *Daily Beast* Defendants' submission of publicly-available documents, including her 45-minute YouTube interview with the QAnon "Prophetess" and prior published news reports about her.  Resp. at 14-15.  She does not challenge the veracity or authenticity of any of these materials (one of which, the YouTube interview, contains her own campaign video), but simply alleges that these records should not be considered at this stage of the litigation.  *Id.*  In so doing, Judge Patrick fails to address the authorities cited by the *Daily Beast* Defendants confirming this Court's broad authority to take judicial notice of publicly available materials.  Pursuant to Federal Rule of Evidence 201(d), a district court properly takes judicial notice of facts that are "not subject to reasonable dispute"—as the exhibits here are not—"if requested by a party and supplied with the necessary information."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d. Cir. 2002).  Indeed, in *McCafferty*, the Third Circuit referenced a *Philadelphia Magazine* article and other non-party news publications discussing the plaintiff in affirming a Rule 12(b)(6) dismissal based on its conclusion that the challenged statements were protected opinions insulated from a false light claim.  955 F.3d at 355-56, 359.[4]

---

[3] Pennsylvania courts have likewise emphasized the importance of summary procedures to protect First Amendment rights.  *See, e.g.*, *First Lehigh Bank v. Cowen*, 700 A.2d 498, 502 (Pa. Super. 1997) ("[I]n the First Amendment area, summary procedures are even more essential. . . . Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors.").

[4] Courts routinely take judicial notice of news articles and other materials filed with a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgment.  *See, e.g.*, *W. Penn Allegheny Health Sys. v. UPMC*, 2009 U.S. Dist. LEXIS 100935, at *77 n.12 (W.D. Pa. Oct. 29, 2009) (explaining that the court "will take judicial notice of the full contents of these articles . . . as well as the contractual exhibits" attached to a motion to dismiss without converting it to a motion for summary judgment), *rev'd in part on other grounds*, 627 F.3d 85 (3d Cir. 2010).  If, however, the Court determines for any reason that it cannot take judicial notice of the documents submitted in support of the instant motion to dismiss and that they are

**B.      Judge Patrick's Strained Reading Of The *Daily Beast* Article Is Foreclosed By Its Text And Would Be Protected Opinion In Any Event.**

Turning to the substance of her claims, Judge Patrick has all but abandoned the central premise of her Complaint, *i.e.*, that referring to her as "QAnon-Linked"—by virtue of her having given an interview to a QAnon "Prophetess," accepted campaign help from a QAnon "Prophet," and appeared on a speakers list for a QAnon conference—is actionable.  In particular, she makes no effort to argue that the description is a statement of fact, rather than one of opinion; is materially false; or was plausibly published with actual malice.  Instead, she pivots, asserting for the first time that the phrase "QAnon-Linked" is actually tantamount to a statement that (a) she is a QAnon *member* (b) whose membership has tainted her judicial decision making.  *See*, *e.g.*, Resp. at 15-16, 19 (arguing that "QAnon-Linked" implies she is not just "linked" to QAnon, but "connot[es]" that "she is *part of* that fringe movement") (emphasis added); *id.* at 6 n.3 (alleging challenged phrase "connote[s] she **is part of QAnon**, or at the very least shares its beliefs") (emphasis in original); *id.* at 17 (contending that article conveys "connection between" her supposed membership in QAnon or adherence to its beliefs "and Judge Patrick's ruling in the Columbus statue case").  As explained below, these newly-minted assertions are insufficient to avoid dismissal for multiple reasons.

*First*, Judge Patrick's Complaint does not reasonably plead either purported implication of the phrase "QAnon-Linked," and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1987).  This is particularly true here, where the *Daily Beast* Defendants

---

needed to adjudicate the motion, the *Daily Beast* Defendants respectfully request that the Court convert their motion to one for summary judgment.  *See* Fed. R. Civ. P. 56.

filed a substantively identical motion in response to Judge Patrick's earlier, state court complaint, and she then did not plead these supposed implications in her Complaint in this action.

*Second*, even if the Court were to consider these newly-asserted implications, they should be rejected as improperly distorting the plain meaning and import of the *Daily Beast* article taken as a whole, the text of which *negates* the meaning Judge Patrick now ascribes to "QAnon-Linked."  The Court must consider the challenged statement in its "full context," *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981), and "consider the effect of the entire" publication, *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir. 1985) ("the allegedly libelous communication" must "be read as a whole, in context").  Here, Judge Patrick's contention that the article implies that she is a QAnon member or adherent cannot be squared with the article's actual text, which expressly (a) reports her "denial that she ever planned to attend a QAnon-affiliated event," (b) states that "she told the *Inquirer* she had no idea why she was listed as a speaker," and (c) describes her interviewers—but not her—as "supporters of the conspiracy theory."  Compl. Ex. A.

The Court should reject Judge Patrick's attempt "to enlarge the natural meaning" of the phrase "QAnon-Linked" in its overall context, and "thereby give to the language a construction which it will not bear."  *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. 1992).  Indeed, inasmuch as the article faithfully reports that Judge Patrick disavowed any connection to QAnon, no reasonable reader would understand her to be an adherent of the group, as opposed to simply having been "linked" to it by, for example, her interview with the "Prophetess" and her appearance on a list of QAnon conference speakers.  Where, as here, the meaning ascribed to a publication by the plaintiff is not reasonable, the plaintiff has "failed to state a claim" as a matter of law.  *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d Cir. 1999).

**Third**, even assuming that the *Daily Beast* article could somehow be construed to convey Judge Patrick's "unfair and forced construction," *Bogash v. Elkins*, 176 A.2d 677, 679 (Pa. 1962), an assertion or insinuation that she is (or was) an adherent or member of QAnon would still constitute a protected expression of opinion that cannot support a false light claim.  In *McCafferty*, for example, the plaintiff alleged that *Newsweek* magazine placed him in a false light by describing him as a "spokesperson" for the "hard right."  955 F.3d at 355.  Considering the plain meaning of those challenged words, their context in the article, and other news articles discussing the plaintiff's political activities, the Third Circuit had no difficulty holding that the statements at issue were protected opinions about plaintiff's "political philosophy" based on "disclosed facts" that provided readers with a basis on which to agree or disagree with the article's point of view.  *Id.* at 358; *see also Reilly v. WNEP*, 2021 Pa. Super. Unpub. LEXIS 734, at *23 (Pa. Super. Mar. 17, 2021) (defendant's statement that plaintiff "embraced Neo-Nazi ideas" was "an opinion") (internal citations omitted).

That the article's discussion of Judge Patrick's connection to QAnon is protected opinion is underscored by the amorphous nature of the group itself.[5]  In *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976), for example, the Second Circuit held that the statement that conservative commentator William F. Buckley, Jr. was a "fellow traveler" of "fascists" was protected opinion because both terms were "concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity."  *See also Balletta v. Spadoni*, 47 A.3d 183 (Pa. Commw. 2012) (discussed in Defs.' Mem. at 20-21 and ignored by Judge Patrick) (describing

---

[5] QAnon is an "umbrella term" for a set of theories with "believers," rather than a political party or group with actual "members."  *See, e.g.*, Kevin Rouse, *What Is QAnon, the Viral Pro-Trump Conspiracy Theory?*, The New York Times (Sept. 3, 2021), https://www.nytimes.com/article/what-is-qanon.html.

plaintiffs as "fellow travelers of antigovernment groups" was protected opinion).[6]  So too here: whether the article is read as simply "linking" Judge Patrick to QAnon, or unfairly read as portraying her as an adherent or even a "member" of QAnon (whatever that means in the context of such a loosely constituted group), the description of her is fundamentally a matter of opinion.

**Finally**, Judge Patrick's related contention that the *Daily Beast* article suggests that her purported embrace of QAnon affected her ruling in the Columbus statue case, Resp. at 2, 19, also fails because, even if that strained reading were credited, the suggestion would likewise be a protected statement of opinion.  Charges of judicial bias are opinion and not actionable as a matter of law.  *See, e.g.*, *Jenkins*, 829 F.2d at 404, 406 (holding that prosecutor's critique of a judge's lenient sentence is protected opinion); Defs.' Mem. at 21-22 (citing additional authorities, none of which were addressed by Judge Patrick in her Response, holding that criticism of judges' decision-making are protected expressions of opinion).  At bottom, Judge Patrick is contending that the article called into question her motivations for ruling the way that she did.  But "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior."  *McCafferty*, 955 F.3d at 359 (citing *Balletta*, 47 A.3d at

---

[6] *See also Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 512 (S.D.N.Y 2012) (statement that plaintiff had been a "leader" of a purportedly "anti-Semitic" and "anti-American" Russian political party was "an expression of opinion" because, "[w]hen used in political discourse, terms of relation and association often have meanings that are 'debatable, loose and varying,' rendering the relationship they describe insusceptible of proof of truth or falsity") (citing *Buckley*, 539 F.2d at 894); *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 598 (D.C. 2000) ("[T]o say of one: you are reactionary, you are undemocratic, you are a nationalist. . . , is similarly to express an opinion."); *Edwards v. Detroit News, Inc.*, 322 Mich. App. 1, 3-4 (Mich. 1st Dist. 2017) (statement that plaintiff was a KKK "leader," despite no record evidence that plaintiff held such a position, was protected opinion because plaintiff had "espoused views consistent with those associated with the Klan" and had "publicly embraced several individuals" with strong connections to the group).

197-99); *see also, e.g.*, *Price v. Viking Penguin*, 881 F.2d 1426, 1432 (8th Cir. 1989)

("[S]tatements regarding motive are 'intrinsically unsuited' to serve as a basis for libel").[7]

In sum, the *Daily Beast* article does not support Judge Patrick's tortured construction of

the phrase "QAnon-Linked," and, even if credited, her interpretation would nevertheless remain

a protected expression of opinion.  Accordingly, her false light claim fails, and her Complaint

should be dismissed.[8]

### C.      Judge Patrick Has Not Plausibly Alleged Actual Malice.

The Third Circuit's decision in *McCafferty* likewise mandates the Complaint's dismissal

on actual malice grounds.  *See* 955 F.3d at 360 (dismissing false light claim for failure to plead

actual malice).  In response to the *Daily Beast* Defendants' opening brief, which explained that a

plaintiff is required to plead more than "actual-malice buzzwords," Defs.' Mem. at 27-28, Judge

Patrick has offered just that, together with the notion that actual malice may be "inferred" from

"objective circumstantial evidence."  Resp. at 20.  Judge Patrick's perfunctory response makes

---

[7] Because Judge Patrick's alternative construction of the challenged statement would also be a protected expression of opinion, this case is unlike *Sprague v. ABA*, 2001 U.S. Dist. LEXIS 18707 (E.D. Pa. Nov. 14, 2001) (cited in Resp. at 5), where one interpretation of the challenged statement was actionable and one was not.  Her invocation of *Krajewski v. Gusoff*, 53 A.3d 793, 805 (Pa. Super. 2012) (cited in Resp. at 5, 19), fares no better.  The case evaded Pennsylvania Supreme Court review because of the plaintiff's death, and was later called into question by then-Chief Justice Castille, who urged that it be revisited to avoid "burdens [on] the press" and "self-censorship."  *Rapaport v. Interstate Gen. Media, LLC*, 99 A.3d 528 (Pa. 2014) (Castille, C.J., concurring).  In any event, *Krajewski* is also distinguishable for the same reason as *Sprague*, *i.e.*, because the publication at issue there implied a false statement of fact.  53 A.3d at 810.  Here, by contrast, the sole challenged statement, however construed, constitutes a protected expression of opinion.

[8] While the *Daily Beast* Defendants believe that describing Judge Patrick as "QAnon-Linked" is a protected expression of opinion, to the extent that the statement is deemed factual *and* interpreted so that "linked" means "linked" (and not "member" or "adherent"), it is substantially true—based on her interview with the "Prophetess," acceptance of campaign help from a QAnon "Prophet," and appearance on the QAnon conference speakers list—and therefore not actionable.  *See* Defs.' Mem. at 23-26.

just two points in support of her conclusory allegation of actual malice: first, that Ms. Bradley "did no independent work on the story, but relied solely on other stories" and, second, that the hyperlinked stories in the *Daily Beast* article do not support the description of Judge Patrick as a "QAnon-Linked" judge. *Id.* at 20-21. As explained below, neither contention suffices to plead actual malice. *See, e.g.*, *Pace v. Baker-White*, <u>432 F. Supp. 3d 495, 513</u> (E.D. Pa. 2020) ("In the wake of *Iqbal* and *Twombly*, 'adequately pleading actual malice is an onerous task.'") (citation omitted).

    ***First***, the Court of Appeals' decision in *McCafferty* confirms that an alleged failure to investigate is insufficient as a matter of law to establish actual malice. <u>955 F.3d at 359</u> (rejecting claim that actual malice may be shown based on *Newsweek*'s failure to ask the preteen plaintiff or his parents for comment and purportedly engaging in "subpar journalism"). The Third Circuit explained that a "failure to investigate . . . standing alone, does not constitute actual malice," and "even an extreme departure from professional standards, without more, will not support a finding of actual malice." *Id.* (citing *Tucker*, <u>237 F.3d at 286</u>).

    ***Second***, Judge Patrick's assertion that none of the hyperlinked news articles "provide[s] any basis for the tortious smears here," Resp. at 21, does not withstand even passing scrutiny. The very first hyperlink in the *Daily Beast* article is to an October 9, 2021 article in *The Philadelphia Inquirer* that states as follows:

> The judge, a Republican, faced criticism earlier this year when she was listed as a speaker at a Gettysburg event ***linked to the QAnon conspiracy theory***. Patrick, however, said she never planned to attend the event and didn't know why she was listed as a speaker.

McCrystal and Walsh, *supra* note 1 (emphasis added). This *Inquirer* article, which has never been challenged by Judge Patrick, includes the very words—"linked" and "QAnon"—in describing her listing as a QAnon conference speaker. Clicking on additional hyperlinks within

*The Inquirer* article takes readers to the April 29, 2021 article that Judge Patrick initially challenged in her (now withdrawn) state court lawsuit and that discusses both the QAnon conference and Judge Patrick's YouTube interview with the QAnon "Prophetess."  *See* Defs.' Ex. 1 (Pa. C.C.P. Compl. at Ex. B).  Given these hyperlinked articles, Judge Patrick cannot plausibly argue that they do not support the *Daily Beast* article's characterization of her.

Moreover, as explained in the *Daily Beast* Defendants' opening brief at 30-31, the hyperlinks in the *Daily Beast* article demonstrate that it relied on reputable news sources, which affirmatively *forecloses* a finding that the article was published with actual malice.  *See, e.g.*, *Marcone*, 754 F.2d at 1090 (publication's reliance on article in *The Inquirer* defeated plaintiff's attempt to show actual malice).  Indeed, because "[t]he hyperlink is the twenty-first century equivalent of the footnote," it "has become a well-recognized means for an author or the Internet to attribute a source" and "instantaneously permits the reader to verify an electronic article's claims."  *Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).  Showing one's work to the reader, and allowing the reader to dig further into and evaluate a journalist's sources, is the antithesis of publishing with a subjective awareness of falsity.

**Finally**, Judge Patrick's Response reflects that she now bases her false light claim not on the words actually used in the *Daily Beast* article but on two newly-asserted implications of those words.  As explained above, the article does not reasonably convey those implications, and they would be protected opinions in any event.  Moreover, Judge Patrick's switch to reliance on implications makes it even more difficult for her to plead actual malice.  "The Third Circuit has . . . held that the actual malice standard is higher" in cases involving an implication.  *Pace*, 432 F. Supp. 3d at 513 (citing *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90 (3d Cir. 2013)).  Under that heightened standard, a plaintiff must plead (and ultimately prove) not only that the

defendant was subjectively aware of the probable falsity of the statement, but also that the defendant intended to communicate the implication giving rise to the false light. *Kendall*, 716 F.3d at 92. This is because a defendant cannot have been subjectively aware that an implication was false if she did not know she was communicating that implication in the first place. *See id.* Thus, a plaintiff alleging false light by implication has a particularly "high hurdle to clear to adequately allege actual malice," and Judge Patrick's half-hearted effort falls well short. *Earley v. Gatehouse Media Penn. Holdings, Inc.*, 2015 U.S. Dist. LEXIS 31065, at *7 (M.D. Pa. Mar. 13, 2015) (dismissing complaint with prejudice on this basis). Accordingly, particularly as recast in her Response, her false light claim fails because she has not—and cannot—plead facts that, if proven, would establish actual malice. The Complaint should therefore be dismissed for this reason as well.[9]

---

[9] In a footnote, Resp. at 21 n.20, Judge Patrick asks in the alternative for leave to amend her Complaint. For the reasons explained above, however, such an amendment would be futile and should not be permitted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (proposed amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted"). In particular, any legal determination (a) that the statement complained of constitutes protected opinion, (b) that Judge Patrick cannot plausibly plead the statement was materially false in light of her interactions with QAnon adherents and appearance on a QAnon conference speakers list, and/or (c) that she cannot plead actual malice in light of Ms. Bradley's reliance on prior published reports cannot be overcome by an amendment to her pleading.

## CONCLUSION

For the foregoing reasons, the *Daily Beast* Defendants respectfully request that the Court dismiss Judge Patrick's Complaint with prejudice, and grant such other relief as it deems appropriate.

Dated:  July 11, 2022                         Respectfully submitted,

                                              BALLARD SPAHR LLP

                                              By: */s/ Kaitlin M. Gurney*
                                              _____
                                                  Kaitlin M. Gurney
                                                  Leslie Minora
                                              1735 Market Street, 51st Floor
                                              Philadelphia, PA 19103
                                              T:  (215) 665-8500
                                              F:  (215) 864-8999
                                              gurneyk@ballardspahr.com
                                              minoral@ballardspahr.com

                                              Seth D. Berlin (*admitted pro hac vice*)
                                              1909 K Street NW, 12th Floor
                                              Washington, DC 20006-1157
                                              T:  (202) 508-1122
                                              F:  (202) 661-2299
                                              berlins@ballardspahr.com

                                              *Counsel for Defendants The Daily Beast*
                                              *Company LLC and Laura Bradley*