**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| HONORABLE PAULA A. PATRICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 2:22-cv-01520** |
| | : | |
| THE DAILY BEAST COMPANY LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

BALLARD SPAHR LLP

Kaitlin M. Gurney, PA 309581
Leslie Minora, PA 324799
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 665-8500
F: (215) 864-8999
gurneyk@ballardspahr.com
minoral@ballardspahr.com

Seth D. Berlin (admitted *pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
T: (202) 508-1122
F: (202) 661-2299
berlins@ballardspahr.com

*Counsel for Defendants The Daily Beast*
*Company LLC and Laura Bradley*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 4

    A.     The Parties ......................................................................................... 4

    B.     Judge Patrick's Interactions with QAnon Supporters .............................. 4

    C.     The Columbus Statue Case .................................................................... 6

    D.     The Daily Beast Article and Its Hyperlinked News Sources ................... 7

    E.     Procedural History .............................................................................. 9

ARGUMENT ..................................................................................................................... 11

I.     NONE OF THE ASSERTED INTERPRETATIONS OF THE ARTICLE IS
      ACTIONABLE ......................................................................................... 11

    A.     The Statement That Judge Patrick Is "QAnon-Linked" ........................ 11

    B.     The Implication That Judge Patrick's Links to QAnon Affected Her Judicial
          Decision-Making ................................................................................. 12

    C.     The Implication That Judge Patrick Is a QAnon Adherent or Believer .............. 13

II.    JUDGE PATRICK HAS FAILED TO PLEAD FACTS THAT, IF PROVEN,
      WOULD ESTABLISH ACTUAL MALICE ................................................... 17

    A.     The Actual Malice Requirement ........................................................... 17

    B.     None of Judge Patrick's Allegations Could Establish Actual Malice .................. 18

    C.     Judge Patrick's Allegation That Defendants Relied Solely on Reputable News
          Sources Forecloses a Finding of Actual Malice .................................... 21

III.   DISMISSAL WITH PREJUDICE IS WARRANTED .................................... 24

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013) .........................................................................................14

*Agora, Inc. v. Axxess, Inc.*,
  90 F. Supp. 2d 697 (D. Md. 2000) ..............................................................................................14

*Ayyadurai v. Floor64, Inc.*,
  270 F. Supp. 3d 343 (D. Mass. 2017) .........................................................................................14

*Balletta v. Spadoni*,
  47 A.3d 183 (Pa. Commw. 2012) .................................................................................12, 13, 16

*Berckeley Inv. Grp. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ........................................................................................21, 22, 23

*Beverly Enters., Inc. v. Trump*,
  182 F.3d 183 (3d Cir. 1999) ........................................................................................................15

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ........................................................................................................17

*Bogash v. Elkins*,
  176 A.2d 677 (Pa. 1962) ..............................................................................................................15

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ..........................................................................................................9

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976) ........................................................................................................16

*CACI Premier Tech., Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ......................................................................................................12

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ........................................................................................................12

*Cheng v. Newman*,
  51 F.4th 438 (1st Cir. 2022) ........................................................................................................16

*City of Phila. v. Sessions*,
  No. 17-3894, 2018 U.S. Dist. LEXIS 69082 (E.D. Pa. Apr. 4, 2018) .........................................5

*Craig v. Harney*,
   331 U.S. 367 (1947)...........................................................................................24

*DeMary v. Latrobe Printing & Publ'g Co.*,
   762 A.2d 758 (Pa. Super. 2000)........................................................................20

*Dunn v. Gannett N.Y. Newspapers, Inc.*,
   833 F.2d 446 (3d Cir. 1987)..............................................................................23

*Earley v. Gatehouse Media Pa. Holdings, Inc.*,
   No. 3:12-1886, 2015 WL 1163787 (M.D. Pa. Mar. 13, 2015) ........................18, 19

*Edwards v. Nat'l Audubon Soc'y*,
   556 F.2d 113 (2d Cir. 1977) .............................................................................21

*Green v. Mizner*,
   692 A.2d 169 (Pa. Super. 1997).......................................................................14

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989)......................................................................................20, 21

*Hill v. Cosby*,
   665 F. App'x 169 (3d Cir. 2016) .......................................................................12

*Howard v. Antilla*,
   294 F.3d 244 (1st Cir. 2002).............................................................................18

*Jenkins v. KYW*,
   829 F.2d 403 (3d Cir. 1987)..............................................................................13

*Joseph v. Scranton Times LP*,
   129 A.3d 404 (Pa. 2015) ...................................................................................19

*Kendall v. Daily News Publ'g Co.*,
   716 F.3d 82 (3d Cir. 2013)................................................................................18

*Lavin v. New York News, Inc.*,
   757 F.2d 1416 (3d Cir. 1985)............................................................................15

*Lee v. TMZ Productions, Inc.*,
   710 F. App'x 551 (3d Cir. 2017) ...............................................................15, 17, 20

*Livingston v. Murray*,
   612 A.2d 443 (Pa. Super. 1992)........................................................................14

*MacElree v. Philadelphia Newspapers*,
   674 A.2d 1050 (Pa. 1996).................................................................................16

*Marcone v. Penthouse Int'l Magazine for Men*,
   754 F.2d 1072 (3d Cir. 1985)..............................................................................14, 21

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991)......................................................................................................23

*Mayfield v. NASCAR*,
   674 F.3d 369 (4th Cir. 2012) ...................................................................................17

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020)................................................................................ *passim*

*McCafferty v. Newsweek Media Grp., Ltd.*,
   No. 18-1276, 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019) ...............................16, 17

*McDowell v. Paiewonsky*,
   769 F.2d 942 (3d Cir. 1985).......................................................................................21

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ...................................................................................17

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
   812 F.3d 294 (3d Cir. 2016).....................................................................................5, 6

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)......................................................................................................21

*Nelson Auto Ctr. v. Multimedia Holdings Corp.*,
   951 F.3d 952 (8th Cir. 2020) ...................................................................................17

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ..................................................................14

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ...................................................................................25

*Pace v. Baker-White*,
   432 F. Supp. 3d 495 (E.D. Pa. 2020) .................................................................18, 24

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
   63 F.4th 240 (3d Cir. 2023) .......................................................................................24

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
   368 F.3d 269 (3d Cir. 2004).......................................................................................22

*Peters v. Del. River Port Auth.*,
   16 F.3d 1346 (3d Cir. 1994)..........................................................................................6

*Pippen v. NBCUniversal Media*,
    734 F.3d 610 (7th Cir. 2013) ................................................................17

*Price v. Viking Penguin*,
    881 F.2d 1426 (8th Cir. 1989) ..............................................................13

*Prince v. Intercept*,
    --- F. Supp. 3d ----, No. 21-CV-10075 (LAP), 2022 WL 5243417 (S.D.N.Y.
    Oct. 6, 2022) .........................................................................................21

*Reese v. Pook & Pook, LLC*,
    158 F. Supp. 3d 271 (E.D. Pa. 2016) ....................................................19

*Ryniewicz v. Clarivate Analytics*,
    803 F. App'x 858 (6th Cir. 2020) ..........................................................17

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.*,
    181 F.3d 410 (3d. Cir. 1999)...................................................................9

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)...........................................................17, 19

*Schiavone Construction Co. v. Time, Inc.*,
    847 F.2d 1069 (3d Cir. 1988)................................................................22

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................18, 20

*St. Surin v. Virgin Islands Daily News, Inc.*,
    21 F.3d 1309 (3d Cir. 1994)..................................................................19

*Tah v. Global Witness Publ'g*,
    991 F.3d 231 (D.C. Cir. 2021)...............................................................17

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
    442 A.2d 213 (Pa. 1981)........................................................................14

*Time, Inc. v. Pape*,
    401 U.S. 279 (1971)...............................................................................23

*Tucker v. Fishbein*,
    237 F.3d 275 (3d Cir. 2001)..................................................................21

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ............................................................17

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ................................................................17

*Yeager v. NPR*,
    773 F. App'x 1030 (10th Cir. 2019) ......................................................................17

**Other Authorities**

4 James Madison, Annals of Congress (1794) .............................................................21

Defendants, The Daily Beast Company LLC and its reporter, Laura Bradley (collectively,

"Defendants"), respectfully submit this Memorandum of Law in support of their Motion to

Dismiss the Amended Complaint filed by the Plaintiff, the Honorable Paula A. Patrick, for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Like Judge Patrick's initial Complaint in this Court, and her prior complaint in a

substantially similar case filed in state court, her Amended Complaint once again fails to state a

claim for false light invasion of privacy for two independent reasons.

*First*, to state a claim, Judge Patrick must plausibly plead that the *Daily Beast* article at

issue (the "Article") contains or implies a false statement of fact.  What she is actually

complaining about has been something of a moving target.  What started as a claim about the

Article's express use of the term "QAnon-Linked" to describe her has now morphed into a claim

about two supposed *implications* from the Article.  Regardless, however, none of this is

actionable as a matter of law.

a.  In its prior Order, this Court ruled that "the idea that Judge Patrick is QAnon-linked"

    is "a factual assertion."  ECF No. 21 ¶ 16.  Defendants previously argued, *see* ECF

    No. 4-1 at 19-26, that "QAnon-linked" is an opinion based on disclosed facts and,

    even if not, is substantially true.  For present purposes, we acknowledge the Court's

    ruling, respectfully preserve our position, and explain below why, even if the phrase

    "QAnon-linked" is both factual and materially false, Judge Patrick has failed to

    satisfy her burden to plausibly plead that it was published with actual malice.

b.  Judge Patrick also contends in her Amended Complaint that the Article falsely

    implies that her purported links to QAnon infected her decision-making in the

"Columbus statue" case, ECF No. 23 ¶¶ 23-24, but this Court already rejected that same contention in its prior Order.  This Court held that "it is not plausible that one could read the Article to suggest" that it calls into question her "competency and objectivity as a jurist."  ECF No. 21 ¶¶ 13.  The Court further concluded that, even if the Article could be so read, such a suggestion would constitute "non-actionable speculation" because there is "no objective way to prove what Judge Patrick was thinking when she ruled on the Columbus statue dispute."  *Id.* ¶ 14.

c.  Finally, Judge Patrick alleges that the Article falsely implies that she is "affiliated with and/or part of" QAnon.  ECF No. 23 ¶ 7.  But the Article cannot plausibly be read to imply that she is a QAnon adherent or believer, including because it expressly reports her denials on that precise point.  While Judge Patrick sidesteps those passages of the Article and instead focuses solely on its headline, governing law requires the Court to consider the Article as a whole and to view the allegedly defamatory statement in its full context.  Moreover, just as any implication about what was on her mind when she decided the statue case would be "non-actionable speculation," so too would any implication about her actual feelings about QAnon.

In sum, Judge Patrick has, at a minimum, failed to state a claim with respect to the two allegedly defamatory implications she ascribes to the Article.

**Second**, and fatal to her case overall, Judge Patrick's Amended Complaint fares no better than its predecessors in plausibly pleading actual malice—*i.e.*, alleging facts that, if proven, would constitute clear and convincing evidence that Defendants knew the challenged statements were false or seriously doubted their truth, yet published them anyway.  In her Amended Complaint, Judge Patrick again either recites actual malice "buzzwords" or relies on facts that

could not support a finding of actual malice.  The operative facts as set forth in the Amended Complaint are not in dispute: Defendants published an article about Judge Patrick's high-profile ruling in the Columbus statue case and described her primary election connections to QAnon, relying solely on news reports in reputable Philadelphia publications, which were hyperlinked for readers to visit themselves.  That is not actual malice as a matter of law, and dismissal is warranted.

Judge Patrick tries to avoid this result in two ways.  She pleads that, because the prior news reports on which Defendants relied included her disavowal, the Article should not have reported on any connection between her and QAnon.  ECF No. 23 ¶¶ 26-28.  Putting aside that the Article accurately reported her denials and tracks those prior reports' description of both her interview by QAnon leaders and her listing as a QAnon conference speaker, she is effectively arguing that Defendants misinterpreted the import of the earlier coverage.  But, as a matter of settled law, misinterpretation is not awareness of falsity, and failure to credit a denial is not actual malice.

Judge Patrick also relies on the two new implications she now pleads.  But even assuming the Article conveyed those implications, under binding Third Circuit precedent, to rely on an implication, she must prove that Defendants both *intended* the implication *and* were *aware* that it was probably false, yet published it anyway.  Put differently, a publisher cannot have subjective awareness of falsity of an implication it did not intend to convey.

Finally, because Judge Patrick's Amended Complaint fails on the merits and further amendment would be futile, this case should be dismissed with prejudice.  Indeed, Judge Patrick's counsel conceded at the pre-motion conference that she had pled all the facts she had and that, if the Amended Complaint were dismissed, she would not seek leave to amend.

## FACTUAL BACKGROUND

### A.     The Parties

Judge Patrick has served as a judge on the Court of Common Pleas of Philadelphia

County since her election in 2003.  ECF No. 23 ¶ 18.  She was also an unsuccessful candidate in

the 2021 Republican primary for a seat on the Pennsylvania Supreme Court.  *Id.* ¶ 34; *see also*

ECF No. 23-1.  She is currently running for re-election to the Court of Common Pleas in the

November election.  *See* https://ballotpedia.org/Paula_A._Patrick.

Defendant The Daily Beast Company publishes *The Daily Beast*, an online news and

entertainment publication that reports and comments on "politics, pop-culture, and power."  *See*

*About Us*, *The Daily Beast*, https://www.thedailybeast.com/company/about-us.  *The Daily Beast*

published the challenged article on October 9, 2021.  *See* Ex. 1.  Defendant Bradley, who holds a

master's degree in journalism from Northwestern University's Medill School of Journalism, has

worked as a reporter for *The Daily Beast* since 2020.  ECF No. 23 ¶ 20; ECF No. 4-11 ¶¶ 2-3.

### B.     Judge Patrick's Interactions with QAnon Supporters

On March 24, 2021, during her campaign for the Pennsylvania Supreme Court, Judge

Patrick participated in a 40-minute video interview on a YouTube program called *Up Front in*

*the Prophetic*.  *See* ECF No. 4-14 (DVD copy of interview).  During that interview, Judge

Patrick repeatedly addressed her QAnon interviewer as "Prophetess," stating "Thank you so

much Prophetess Francine.  It's just awesome to be here.  I love you guys, and I'm so happy to

have met you through Prophet Mark Taylor.  You guys are tremendous."  *Id.* at 3:05-3:18.  The

Prophetess said she was "excited" that Judge Patrick was "thinking about" attending an

upcoming QAnon-affiliated conference in June, even though it was after the May 18 election.

Judge Patrick responded affirmatively, welcoming the Prophetess's support of her campaign.  *Id.*

at 23:48-24:02 (PROPHETESS: "I'm excited that you are thinking about being at our upcoming

event in June. . . .  Oh my gosh, guys, we need to rally, rally, rally with her, Hallelujah," to

which Judge Patrick responded, "Yes.").  The Court may take judicial notice of Judge Patrick's

public statements.  *See* Fed. R. Evid. 201; *City of Phila. v. Sessions*, No. 17-3894, 2018 U.S.

Dist. LEXIS 69082, at *4 (E.D. Pa. Apr. 4, 2018) (not available on Westlaw) (taking judicial

notice of statements by public official).  The video interview concluded with a campaign ad for

Judge Patrick, apparently supplied by her campaign.  ECF No. 4-14 at 40:48-44:20.

       In the wake of her interview with the Prophetess, Judge Patrick appeared on a list of

speakers for the QAnon-affiliated group's June 2021 conference, "Patriots Arise, Awakening the

Dead!"[1]  When asked about that fact by reporters from *The Inquirer* in April 2021, she told them

that she "didn't plan to attend" the conference and, despite her exchange with the Prophetess,

asserted that she "had never heard of it."  Judge Patrick's interview with the Prophetess,

appearance on the speakers list, and disavowals were all reported in online and print articles

published over the next two days by the *Inquirer*.[2]  The *Associated Press* wire service picked up

the story as well.[3]  The Court may take judicial notice of this prior news coverage.  *See, e.g.*,

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 301 n.7

---

[1] *See, e.g.*, Stephen Caruso, *Mastriano, Pa. Supreme Court candidate slated to appear at QAnon conference*, Pa. Capital-Star (Apr. 28, 2021), https://www.penncapital-star.com/government-politics/mastriano-pa-supreme-court-candidate-slated-to-appear-at-qanon-conference/ (Ex. 2) (featuring conference flyer depicting planned conference speakers, including photo of Judge Patrick).

[2] *See* Andrew Seidman, *QAnon supporters listed a Philly judge as a speaker at their event. She says she's not going.*, Phila. Inquirer (Apr. 29, 2021), https://www.inquirer.com/politics/pennsylvania/judge-paula-patrick-qanon-conference-gettysburg-20210429.html (Ex. 3); published in print edition of newspaper as Andrew Seidman, *Judge Disavows Any QAnon Link*, Phila. Inquirer (Apr. 30, 2021) (Ex. 4).

[3] *Judge running for high court office disavows QAnon conspiracy*, AP (Apr. 30, 2021), https://apnews.com/article/conspiracy-courts-government-and-politics-0eb0a8ffb6f9e84756f824663e3f5da4 (Ex. 5).

(3d Cir. 2016) (court may take judicial notice of news articles for "purpose of determining 'what was in the public realm at the time'"); *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1356-57 (3d Cir. 1994) ("we take judicial notice of newspaper accounts highlighting controversies" that were context for lawsuit).

**C.    <u>The Columbus Statue Case</u>**

Although Judge Patrick lost her primary bid for the Pennsylvania Supreme Court in May 2021, she remained in the news.  She presided over a politically-charged and "highly publicized" lawsuit filed against the City of Philadelphia and Mayor Jim Kenney by a group called the Friends of Marconi Plaza.  ECF No. 23 ¶ 2.  The lawsuit sought to block the planned removal of a Christopher Columbus statue in South Philadelphia.  *Id.* ¶ 9 (calling the case "a controversial issue of public import").

Judge Patrick issued various rulings about the statue.  First, in August 2021, she ruled that the City's decision to remove the statue was unsupported by law and based on insufficient evidence.  Then, in October 2021, she ruled that the City, which had erected a plywood box encasing the statue, must remove the box, and that a transparent protective barrier could be installed in its place.  *See* ECF No. 23 ¶ 41 (asserting that Judge Patrick ruled "against the Philadelphia Mayor's incorrect actions regarding the Columbus statue, instead following the law and ordering the removal of the plywood covering of th[e] statue").  These rulings were also the subject of both national and international news coverage.[4]

---

[4] *See, e.g.*, Patrick Reilly, *Phila. Columbus statue to remain in box for parade, judge rules*, N.Y. Post (Oct. 10, 2021), https://nypost.com/2021/10/10/christopher-columbus-statue-in-philadelphia-to-remain-in-box-for-parade-judge-rules/; Jessica Schladebeck, *Phila. judge rules Christopher Columbus statue can remain in plaza*, N.Y. Daily News (Aug. 19, 2021), https://www.nydailynews.com/news/national/ny-philadelphia-judge-christopher-columbus-statue-20210819-xqq3eq3fc5be3b3tntkcpjipwe-story.html; Christina Coulter & Andrew Court, *Judge rules 144-year-old Christopher Columbus statue in Phila. can remain after city voted to*

D.      **The *Daily Beast* Article and Its Hyperlinked News Sources**

On October 9, 2021, *The Daily Beast* published the Article, which addressed Judge

Patrick's ruling the day before.  ECF No. 23-1.  The Article was titled *QAnon-Linked Judge*

*Rules in Unhinged War Over Philly's Columbus Statue*, and bore the subheadline, *After a lawyer*

*threatened to tear down a plywood box covering the statue himself, Judge Paula Patrick ruled*

*that it must remain visible to the public*.  ECF No. 23 ¶ 4; ECF No. 23-1.  The Article

summarized Judge Patrick's ruling in the Columbus statue case and referenced the prior

controversy, including her interview with the Prophetess, her listing as a featured speaker at a

QAnon-affiliated conference, and her denials.  ECF No. 23-1.

Judge Patrick pleads that, in preparing and publishing the Article, Defendants "conducted

no investigation of their own, but instead relied for the entirety of" the Article on three "reports

(The *Inquirer*, 6ABC and CBS Philadelphia)."  ECF No. 23 ¶ 29.  The pleading goes on to cite

reporter Bradley's prior declaration challenging personal jurisdiction, in which she stated that

she "'did not communicate with any sources" about the Article, "made no phone calls or other

communications to anyone in Pennsylvania and conducted no interviews there or with anyone

residing there.'"  ECF No. 23 ¶ 31 (quoting ECF No. 4-11 ¶ 9).

The *Daily Beast*'s Article remains available online as originally published.  *See* Laura

Bradley, *QAnon-Linked Judge Rules in Unhinged War Over Philly's Columbus Statue*, Daily

Beast (Oct. 9, 2021), https://www.thedailybeast.com/qanon-linked-judge-rules-in-war-over-

columbus-statue-and-plywood-box-in-philadelphia?ref=scroll (attached as Ex. 1).  Viewing the

Article online (the only medium in which it was published) enables readers, as well as the Court,

---

*remove it last July 'without any legal basis,'* Daily Mail (Aug. 18, 2021),
https://www.dailymail.co.uk/news/article-9906279/Judge-said-Columbus-statue-Philly-remain-
city-voted-remove-without-legal-basis.html.

to access the news sources hyperlinked in the Article, links that are unavailable in the ProQuest version of the Article attached as Exhibit A to the Amended Complaint.  For example, in the online Article, the words "*Philadelphia Inquirer*" in the first paragraph hyperlink to an *Inquirer* article published just three hours earlier.  *See* Laura McCrystal & Sean Collins Walsh, *A judge ordered Phila. to remove the plywood box covering the Christopher Columbus statue in Marconi Plaza*, Phila. Inquirer (Oct. 9, 2021), https://www.inquirer.com/news/columbus-statue-south-philly-marconi-plaza-20211008.html (the "October *Inquirer* Article," attached as Ex. 6).  That article reported:

> The judge, a Republican, faced criticism earlier this year when she was listed as a speaker at a Gettysburg event linked to the QAnon conspiracy theory.  Patrick, however, said she never planned to attend the event and didn't know why she was listed as a speaker.

*Id.* at 4.  In addition to that article, Defendants also relied on and hyperlinked to articles about Judge Patrick's Columbus statue ruling published by *6ABC Action News* and *CBS3 Philadelphia*. ECF No. 23 ¶ 29 (referencing *6ABC* and *CBS3* articles, attached as Exs. 7 and 8, respectively).

Tracking the earlier news coverage, the *Daily Beast*'s Article accurately reported that Judge Patrick had participated in "an interview with supporters of the [QAnon] conspiracy theory," and that she "was once allegedly on the speaker's list for a QAnon-linked event."  ECF No. 23-1.  The Article also expressly noted that Judge Patrick later "denied that she ever planned to attend a QAnon-affiliated event," and had "told the *Inquirer* she had no idea why she was listed as a speaker" at that conference.  *Id.*  The Amended Complaint does not challenge the accuracy of any of these statements.

Oddly, Judge Patrick nowhere mentions the October *Inquirer* Article in her Amended Complaint.  Instead, she alleges that a ***different*** *Inquirer* article, published five months earlier at the end of April, *see* note 2 *supra*, was Defendants' "main" source and should have put them on

notice that she had "disavowed" any "link[age] to QAnon." ECF No. 23 ¶¶ 26-27 (citing and quoting "April *Inquirer* Article" (Ex. 4)).[5] Putting aside that Judge Patrick took a diametrically opposite position in her two earlier complaints, the April *Inquirer* Article also reported that she had "appeared for an interview on a YouTube and podcast show hosted by the two conservative media personalities organizing the June conference in Gettysburg [the QAnon "Prophet" and "Prophetess"]," that the "Prophet" was trying to help her Supreme Court campaign, that he had written "a book claiming God told him in 2011 that Donald Trump would be elected president," and that he had been "featured in a movie called *The Trump Prophecy*." Ex. 4.

Despite these various statements in the April *Inquirer* Article, Judge Patrick contends in her Amended Complaint that "there is nothing in this 30 April 2021 *Inquirer* article that provides any support for the defendants' knowingly false linkage to Q'Anon." ECF No. 23 ¶ 26. The Court may consider articles "incorporated by reference" into Judge Patrick's complaint and "integral" to her claim, *see, e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), and it need not credit her characterization of them when it is contradicted by their plain text, *see, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 427 (3d. Cir. 1999) (explaining that a court may determine whether such documents, whose authenticity is not disputed, "contradict[] the complaint's legal conclusions or factual claims").

**E.**      **Procedural History**

As the Court is aware, Defendants challenged Judge Patrick's initial Complaint asserting both lack of personal jurisdiction and failure to state a claim. In its March 20, 2023 Order, the

---

[5] Although the online version of the April *Inquirer* Article is not itself hyperlinked in the *Daily Beast* Article, it can be accessed through hyperlinks in the October *Inquirer* Article.

Court rejected the jurisdictional challenge, ECF No. 21 ¶ 7, but granted the Rule 12(b)(6) motion to dismiss, *id.* ¶ 18.

The Court made three rulings with respect to whether the Article stated or implied a false assertion of fact:

- ***First***, the Court held that the Article's "characterization of Judge Patrick as 'QAnon-linked' is an actionable expression of fact."  ECF No. 21 ¶ 15.

- ***Second***, although Judge Patrick alleged that the Article called her "competency and objectivity as a jurist into question," ECF No. 23 ¶ 22, the Court held that "it is not plausible that one could read the Article to suggest a connection between Judge Patrick's alleged link to QAnon and her ruling in the Columbus statue case."  ECF No. 21 ¶ 13.  The Court further concluded that, even if the Article implied such a connection, it is "non-actionable speculation" because there is "no objective way to prove what Judge Patrick was thinking when she ruled on the Columbus statue dispute."  *Id.* ¶ 14; *see also id.* ¶ 15 (noting that, "if Defendants had referred to Judge Patrick as a 'QAnon Judge,'" that might well "have amounted to an expression of opinion that is unprovable as false").

- ***Third***, the Court refused to consider an allegation raised only in Judge Patrick's opposition brief: that "the description of her as 'QAnon-linked' suggests that she is a member, adherent, and/or follower of the QAnon conspiracy."  *Id.* ¶ 12.

Although it ruled that one of Judge Patrick's proffered interpretations of the Article was sufficiently factual to be actionable, the Court nevertheless dismissed the complaint because "Judge Patrick ha[d] not pled any facts that make it plausible that Defendants acted with actual malice when they described her as a QAnon-linked Judge."  ECF No. 21 ¶ 18.  The Court reasoned that, to the extent Judge Patrick alleged that "Mr. Bradley did no independent work on the story, but relied solely on other stories," she could not plead actual malice as a matter of law, given that "even an extreme departure from professional standards, without more, will not support a finding of actual malice."  *Id.* ¶ 19 (citing *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020)).  The Order granted Judge Patrick leave to re-plead if she had "a good faith basis to amend her pleading as to Defendants' actual malice."  *Id.* at 10 ¶ 4.

Judge Patrick filed her Amended Complaint on March 29, 2023. In addition to complaining that the Article describes her as "QAnon linked," ECF No. 23 ¶ 23, she also alleges that it "place[s] into question all of [her] rulings, ethics, and objectivity," *id.* ¶ 24 (despite this Court's prior rejection of that claim), and "conveys" that "she is affiliated with and/or part of" the "extremist movement," *id.* ¶ 7. With respect to actual malice, Judge Patrick's Amended Complaint again includes generalized allegations and relies on Defendants' purported lack of investigation, including their alleged failure to give more weight to the "disavowal" headline of the April *Inquirer* Article. *Id.* ¶¶ 25-26, 29-31.

In accordance with the Court's procedures, the parties conferred regarding this Motion to Dismiss and, after failing to reach agreement, submitted a joint pre-motion letter to the Court on April 11, 2023. *See* Ex. 9. The Court held a pre-motion conference on April 17, 2023. At the pre-motion conference, Judge Patrick's counsel confirmed that she had in her Amended Complaint pled all the facts she had and that, if her allegations still failed to state a claim, she would have no basis for further amendment. ECF No. 24. The Court issued a briefing schedule, and this Motion follows. ECF No. 25.

## ARGUMENT

I. **NONE OF THE ASSERTED INTERPRETATIONS OF THE ARTICLE IS ACTIONABLE.**

A. **The Statement That Judge Patrick Is "QAnon-Linked"**

This Court ruled in its prior Order that the phrase "QAnon-Linked" is "an actionable expression of fact." ECF No. 21 ¶ 15. Defendants do not seek to re-litigate that question on this Motion – or the related question of whether that phrase, even if factual, is substantially true as a matter of law – and simply preserve their arguments for another day, including any appeal if necessary. *See* ECF No. 4-1 at 19-26.

Defendants do note one issue in this regard because it relates to their actual malice

argument below.  The Court's ruling appeared to focus on one aspect of the protection for

opinion – whether "QAnon-Linked" is *provably false*.  The Court's ruling did not appear to focus

on the separate strand of the opinion doctrine that examines the full context of the challenged

statement and protects a speaker's conclusions as *opinions based on disclosed facts*, even where

her conclusions sound like factual assertions.  *See* ECF No. 4-1 at 20-22 (citing cases);

*McCafferty*, 955 F.3d at 357 ("When an article discloses the underlying facts, readers can easily

judge the facts for themselves."); *Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. 2012)

(statements about plaintiffs' ideological or political affiliations were non-actionable opinions

where "the article fully disclose[d] the facts upon which" statements were based).[6]  This branch

of the opinion doctrine bears on the question of actual malice because Judge Patrick cannot

establish that a speaker who thought she was expressing a conclusion based on facts that she

drew from prior news coverage in reputable publications, and then made available to readers via

hyperlinks, was subjectively aware of the falsity of her conclusion.  *See* Part II *infra.*

### B.    The Implication That Judge Patrick's Links to QAnon Affected Her Judicial Decision-Making

Judge Patrick once again alleges that the Article implies a connection between her ties to

QAnon and her judicial decision-making.  *See* ECF No. 23 ¶¶ 23-24 (alleging that Article calls

---

[6] Courts routinely hold statements that, in a vacuum, would be provably false are, in context, protected opinions based on disclosed facts. *See, e.g.*, *Hill v. Cosby*, 665 F. App'x 169, 175 (3d Cir. 2016) (non-precedential) (stating plaintiff was a liar was non-actionable opinion where speaker disclosed "why he believed these accusations were nothing but lies"); *Chau v. Lewis*, 771 F.3d 118, 125-29 (2d Cir. 2014) (same for statements in *The Big Short* that people like plaintiff were "crooks," deliberately "getting lots of unqualified borrowers" to "buy a house they couldn't afford," and creating financial instruments out of "whole cloth"); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 299-302 (4th Cir. 2008) (same for statements that company employed "mercenaries" and "hired killers" who "want to kill for the sake of killing, … torture people, and never have to come under the long arm of the law").

"into question" her "competency and objectivity as a jurist" and "all of [her] rulings, ethics and objectivity"). But the Court has already ruled that (a) "it is not plausible that one could read the Article to suggest [such a] connection," ECF No. 21 ¶ 13; and, (b) even if the Article could be read that way, that suggestion would be "non-actionable speculation," because "[t]here is, of course, no objective way to prove what Judge Patrick was thinking when she ruled on the Columbus statue dispute," *id.* ¶ 14.

Moreover, this strained reading of the Article, already rejected by the Court as implausible, is in any event non-actionable. As the Third Circuit has held, critiques of judicial decisions are protected opinions. *See Jenkins v. KYW*, 829 F.2d 403, 406-09 (3d Cir. 1987); *see also* ECF No. 4-1 at 21-22 (collecting cases). At bottom, Judge Patrick is contending that the Article called into question her motivations for ruling the way that she did. But "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior." *McCafferty*, 955 F.3d at 359 (citing *Balletta*, 47 A.3d at 197-99); *see also, e.g.*, *Price v. Viking Penguin*, 881 F.2d 1426, 1432 (8th Cir. 1989) ("statements regarding motive are 'intrinsically unsuited' to serve as a basis for libel").

### C.    The Implication That Judge Patrick Is a QAnon Adherent or Believer

Judge Patrick's final contention, that the Article implies that she is "part of" or an adherent of QAnon, should also be rejected because the Article's text refutes such an implication and, even if the Article did convey such an insinuation, it, too, would be protected opinion.

***First***, the alleged implication that Judge Patrick is a QAnon believer or adherent cannot be squared with what is actually in the Article. The Article (a) reports Judge Patrick's "denial that she ever planned to attend a QAnon-affiliated event," (b) states that "she told the *Inquirer* she had no idea why she was listed as a speaker," (c) describes her interviewers – but not her – as "supporters of the conspiracy theory," and (d) hyperlinks to prior news coverage that reinforces

13

her disavowal that she believes in QAnon's conspiracy theories.  *See generally* ECF No. 23-1; Ex. 1.

The Court should reject Judge Patrick's attempt to ascribe to the Article a meaning at war with its plain text, or "to enlarge the natural meaning" of the phrase "QAnon-Linked" in its overall context and "thereby give to the language a construction which it will not bear." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. 1992).  Indeed, inasmuch as the Article takes pains to report that Judge Patrick disavowed any connection to QAnon, no reasonable reader would understand her to be an adherent of the group, as opposed to simply having been "linked" to it by, for example, her campaign interview with the Prophetess and appearance on a list of planned QAnon conference speakers.

With her argument soundly refuted by the text of the Article, Judge Patrick focuses myopically on the Article's headline, with its reference to "QAnon-Linked."  Courts, however, must examine the challenged statements in their "full context," *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981), and "consider the effect of the entire" publication. *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. 1997); *see also Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir. 1985) ("The proper test . . . requires that the allegedly libelous communication be read as a whole, in context.").  Here, that context includes the hyperlinks that enabled readers to see Ms. Bradley's sources; such hyperlinks are "the twenty-first century equivalent of a footnote" and "instantaneously permit[ ] the reader to verify an electronic article's claims."  *Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).[7]

---

[7] *Accord Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 362-65 (D. Mass. 2017); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 700-05 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999).

For example, in *Lavin v. New York News, Inc.*, 757 F.2d 1416, 1420-21 (3d Cir. 1985), the Third Circuit rejected a defamation claim based on the headline "THE BEST COPS MONEY CAN BUY" and a photograph of the plaintiff, explaining that "its meaning is immediately clarified by the lead paragraph of the article."  Similarly, in *Lee v. TMZ Productions, Inc.*, 710 F. App'x 551, 559 (3d Cir. 2017), the Court affirmed an order dismissing a case, emphasizing that the headlines, "Police Bust Prostitution Ring Promising Cocaine & Hooker Super Bowl Party Pack" and "Super Bowl Shocker: Interstate Child Prostitution Ring Busted in Connection to Big Game," had to be "viewed on the backdrop of the entire report" because "we presume that the public reads the entire article when we assess its fairness and accuracy" (cleaned up).

When the Article's full text is considered as a whole, there is no basis to conclude that Judge Patrick is a QAnon adherent or believer or that the Article suggests as much.  Because the meaning Judge Patrick ascribes to the Article is not reasonable, she has "failed to state a claim" as a matter of law.  *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d Cir. 1999).

***Second***, even if the Article could somehow be construed to convey Judge Patrick's "unfair and forced construction," *Bogash v. Elkins*, 176 A.2d 677, 679 (Pa. 1962), it is entirely lawful to speculate whether, in her head and heart, she believes in QAnon theories.  Unlike some groups, in which "membership" is easily verified (say, a "card-carrying member of the ACLU"), QAnon is, according to Judge Patrick and others, something far more nebulous, which she defines as an "umbrella term for a set of internet conspiracy theories" whereby "followers believe" in various aspects of "QAnon lore."  ECF No. 23 ¶ 3; *see also* ECF No. 21 ¶ 16 (Court's observation that QAnon as a "group is somewhat ill-defined").  Even if such theories were susceptible of a more precise description, any suggestion that Judge Patrick believes them would not be actionable, as this Court implicitly recognized when it opined that calling her a "QAnon

judge" might well constitute "an expression of opinion that is unprovable as false."  ECF No. 21

¶ 15 (citing *Cheng v. Newman*, 51 F.4th 438, 446 (1st Cir. 2022) (labels such as "right-wing,"

"far-right," and "conspiracy theorist" are "vague, judgement-based terms" and "are not

objectively provable as false")).

In *McCafferty*, for example, the plaintiff alleged that *Newsweek* magazine placed him in a

false light by describing him as a "spokesperson" for the "hard right."  955 F.3d at 356.  The

Third Circuit had no difficulty holding that the statements at issue were protected opinions about

plaintiff's "political philosophy" based on "disclosed facts" that provided readers with a basis on

which to agree or disagree with those assertions.  *Id.* at 358-59; *see also Buckley v. Littell*, 539

F.2d 882, 894 (2d Cir. 1976) (calling plaintiff "fellow traveler" of "fascists" was protected

opinion and "insusceptible to proof of truth or falsity"); *Balletta*, 47 A.3d at 189-90 (describing

plaintiffs as "fellow travelers of antigovernment groups" was protected opinion).

The Pennsylvania Supreme Court's decision in *MacElree v. Philadelphia Newspapers*,

674 A.2d 1050, 1055 (Pa. 1996), cited in Judge Patrick's pre-motion letter, Ex. 9 at 2, is not to

the contrary.  The court emphasized that statements about a plaintiff's beliefs – there,

"accusations of racism" – have routinely "been held not to be actionable defamation."  674 A.2d

at 1055; *see also id.* at 1055-56 (Cappy, J., concurring) (emphasizing same).  The court

nevertheless allowed the case to proceed past the pleading stage because the challenged

publication had also accused the plaintiff of "abusing his power as the district attorney, an

elected office, to further racism and his own political aspirations.  Such an accusation amounts to

a charge of misconduct in office."  *Id.* at 1054; *see also McCafferty v. Newsweek Media Grp.,

Ltd.*, No. 18-1276, 2019 WL 1078355, at *5 (E.D. Pa. Mar. 7, 2019) (noting that "Pennsylvania

courts have repeatedly held that labeling someone a racist without more, though undoubtedly

uncomplimentary, is non-actionable opinion" and distinguishing statement at issue in *MacElree* because "it could reasonably be understood as an accusation that plaintiff was engaging in racist conduct"), *aff'd*, 955 F.3d at 358 (statement at issue in *MacElree* implied plaintiff engaged in conduct unlawfully "abusing his power as the district attorney").

Accordingly, even if the Article could somehow be read to portray Judge Patrick as an adherent of or believer in QAnon, such a portrayal is fundamentally a matter of opinion.

## II.   JUDGE PATRICK HAS FAILED TO PLEAD FACTS THAT, IF PROVEN, WOULD ESTABLISH ACTUAL MALICE.

### A.   The Actual Malice Requirement

In its prior Order, this Court ruled that, to survive dismissal, Judge Patrick would have to allege *facts* that, if proven, would constitute clear and convincing evidence "that Defendants acted with actual malice when they described her as a QAnon-linked judge," ECF No. 21 ¶ 18; *see also McCafferty*, 955 F.3d at 360 (dismissing false light claim for failure to plausibly plead actual malice); *Lee*, 710 F. App'x at 560 (same for defamation claim).  Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard" and held that a suit by a public official or other public figure challenging speech "may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).[8]

---

[8] *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *McCafferty*, 955 F.3d at 360; *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Yeager v. NPR*, 773 F. App'x 1030, 1031 (10th Cir. 2019); *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018); *Tah v. Global Witness Publ'g*, 991 F.3d 231, 239-40 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) (all requiring plaintiff to plausibly plead actual malice).

The requirement that a defendant published with a subjective awareness of probable falsity – that it "in fact entertained serious doubts as to the truth of [the] publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) – has particular force with respect to the two *implications* Judge Patrick ascribes to the Article. "The Third Circuit has . . . held that the actual malice standard is higher" in cases involving an implication. *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020) (citing *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90 (3d Cir. 2013)), *aff'd*, Nos. 20-1308 & 20-1401, 2021 WL 963527 (3d Cir. Mar. 15, 2021). Under that heightened standard, a plaintiff must plead (and ultimately prove) not only that the defendant was subjectively aware of the probable falsity of the statement, but also that the defendant intended to communicate the implication the plaintiff ascribes to the publication. *Kendall*, 716 F.3d at 92. This is because a defendant cannot have been subjectively aware that an implication was false if she did not know she was communicating that implication in the first place. *See id.*; *see also Howard v. Antilla*, 294 F.3d 244, 256 (1st Cir. 2002) (applying same requirement to false light claims). Thus, Judge Patrick has a particularly "high hurdle to clear to adequately allege actual malice" on her implication claims. *Earley v. Gatehouse Media Pa. Holdings, Inc.*, No. 3:12-1886, 2015 WL 1163787, at *3-4 (M.D. Pa. Mar. 13, 2015) (dismissing complaint with prejudice on this basis).

### B. None of Judge Patrick's Allegations Could Establish Actual Malice.

Notwithstanding this Court's prior Order, Judge Patrick's Amended Complaint largely rehashes her initial Complaint's allegations, which the Court has already ruled insufficient, and otherwise fails to plausibly plead actual malice.

*First*, Judge Patrick again asserts, in conclusory fashion, that Defendants published the Article "with actual malice and reckless disregard for the truth." ECF No. 23 ¶ 38; *see also id.*

¶ 25 (alleging Defendants "act[ed] with actual malice"), ¶ 43 (alleging they "had knowledge of, or acted in reckless disregard as to" falsity).   In an equally conclusory fashion, she alleges that Defendants' publication was "malicious," *id.* ¶¶ 2, 5, 10, 12, 23, 27, 29, 30, 32, "knowingly false," *id.* ¶¶ 1, 6, 8, 23, 27, 33, "fabricated," *id.* ¶ 11, and "reckless," *id.* ¶¶ 12, 23.

As the Court ruled in its prior Order, such "bald assertion[s]" are insufficient to state a claim.  ECF No. 21 ¶ 18.  Under the pleading rules established by the Supreme Court, when actual malice is an element of a claim, a plaintiff is required to plead more than "actual-malice buzzwords." *Schatz*, 669 F.3d at 56; *see also Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 289 (E.D. Pa. 2016) ("[M]erely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations.").  Rather, a plaintiff must plead sufficient *facts* to "show that the existence of actual malice is plausible on its face." *Earley*, 2015 WL 1163787, at *2 (cleaned up).  Here, Judge Patrick's failure to "plead facts that suggest actual malice … dooms this claim." *McCafferty*, 955 F.3d at 360.

**Second**, Judge Patrick continues to allege that Defendants published the Article with ill will.  ECF No. 23 ¶¶ 8-9 (alleging "politically and woke motivated" article designed to "punish" her), ¶ 36 (alleging "intentional and malicious scheme and plot to smear" her), ¶ 37 (alleging "intent to harm" her reputation); *see also* ECF No. 1 ¶ 6 (same in initial complaint).  But, as Defendants explained previously, ECF No. 4-1 at 29-30, the actual malice standard "is not met through a showing of ill will or malice in the ordinary sense." *Joseph v. Scranton Times LP*, 129 A.3d 404, 436-37 (Pa. 2015).  The Third Circuit has instructed, "'neither . . . ill will, bias, spite, nor prejudice . . . [is] sufficient to establish either a knowledge of the falsity of, or a reckless disregard of, the truth or falsity of the materials used.'" *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994).  Rather, actual malice "focuses on [the defendants']

attitude towards *the truth*, not towards [the plaintiff]." *McCafferty*, 955 F.3d at 360; *accord DeMary v. Latrobe Printing & Publ'g Co.*, 762 A.2d 758, 764 (Pa. Super. 2000).  In short, Judge Patrick cannot allege actual malice simply by asserting Defendants harbored ill will toward her.

**Third**, Judge Patrick doubles down on her claim that Defendants' investigation was insufficient.  *See, e.g.*, ECF No. 23 ¶ 29 ("These defendants have specifically admitted that they conducted no investigation of their own, but instead relied for the entirety of their malicious article on the three above reports (*The Inquirer*, 6ABC and CBS Philadelphia)"); *see also id.* ¶¶ 25-28, 30-31, 37-38.  The Court, however, already has ruled that this is of no moment.  As the Court explained, because "even an extreme departure from professional standards" cannot establish actual malice as a matter of law, Judge Patrick could not plead actual malice merely by alleging that "Ms. Bradley did no independent work on the story, but relied solely on other stories."  ECF No. 21 ¶ 19 (citing *McCafferty*, 955 F.3d at 359).  Indeed, it is black-letter law that actual malice is "not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing."  *St. Amant*, 390 U.S. at 731.  Where, as here, a complaint's allegations "rise to no more than professional negligence," the claims must be dismissed.  *Lee*, 710 F. App'x at 560 (affirming Rule 12(b)(6) dismissal of defamation claim for, *inter alia*, failure to plausibly plead actual malice); *see also McCafferty*, 955 F.3d at 359 (affirming dismissal because allegation of "subpar journalism," based on failure to ask preteen plaintiff or his parents for comment, could not establish actual malice).

**Fourth**, Judge Patrick contends she can establish actual malice because she had "disavow[ed]" any connection to QAnon (as the Article in fact reported).  ECF No. 23 ¶ 26.  But a publisher's decision not to credit a denial, "however vehement," cannot establish actual malice because denials "are so commonplace in the world of polemical charge and countercharge that,

in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989); *accord Prince v. Intercept*, ---F. Supp. 3d ----, No. 21-CV-10075 (LAP), 2022 WL 5243417, at *17 (S.D.N.Y. Oct. 6, 2022) ("It is well established that denials without more are insufficient to support a plausible claim of actual malice.") (citing *Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 121 (2d Cir. 1977)). Otherwise, a public official could effectively squelch reporting about her conduct simply by issuing a denial, and that would undermine "the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *id.* at 282 (actual malice rule protects "the citizen-critic" because, in our system of government, "'the censorial power is in the people over the Government, and not in the Government over the people.'") (quoting 4 James Madison, Annals of Congress, p. 934 (1794)).

C.      **Judge Patrick's Allegation that Defendants Relied Solely on Reputable News Sources Forecloses a Finding of Actual Malice.**

Judge Patrick's contention that Defendants relied solely on prior news coverage in reputable publications also dooms her claim. *See, e.g.*, *Tucker v. Fishbein*, 237 F.3d 275, 287 (3d Cir. 2001) (plaintiff could not establish actual malice where "the [challenged] article was clearly derived in large part from previously published articles"); *Marcone*, 754 F.2d 1072, 1090 (3d Cir. 1985) (reliance on prior "newspaper article" in *Inquirer* negated finding of actual malice); *McDowell v. Paiewonsky*, 769 F.2d 942, 951 (3d Cir. 1985) (holding plaintiff failed to adduce evidence of actual malice where "defendant relied on the official reports and news accounts of the various construction projects"). Thus, by alleging that Defendants consulted only prior news coverage, as reflected in the hyperlinks in the Article, and performed no other investigation, Judge Patrick has taken actual malice out of this case as a matter of law. *See, e.g.*, *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) (holding that plaintiff's

21

"unequivocal[]" statements in complaint were binding "[j]udicial admissions"); *Parilla v. IAP Worldwide Servs. VI, Inc*., 368 F.3d 269, 275 (3d Cir. 2004) (same).

In her portion of the pre-motion letter, Judge Patrick makes a confused attempt to extricate herself from the consequences of her pleading.  First, she asserts that "the subjective state of actual malice may be proven by objective circumstantial evidence."  *See* Ex. 9 at 4-5. This is true as far as it goes, but it does not help Judge Patrick here.  The only "circumstantial evidence" she points to is the group of prior articles from reputable publishers on which she has pleaded Defendants exclusively relied.  Her case is thus a far cry from cases like *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069, 1091-92 (3d Cir. 1988) (cited in pre-motion letter, Ex. 9 at 5), in which the circumstantial evidence included disregard of "four independent sources with good bases for knowledge" who had "contradicted" the challenged statements.

Second, according to Judge Patrick, these prior news reports – and, in particular, the April *Inquirer* Article – did not "provide any basis for" the Article and its reference to "QAnon-Linked."  *See* Ex. 9 at 4-5.  But this assertion is belied by the prior articles themselves, as Judge Patrick has previously acknowledged.  Although she now contends that the April *Inquirer* Article should have put Defendants on notice that she had no connection to QAnon, she previously averred, in her prior complaints, that the April *Inquirer* Article conveyed "that there was, indeed, an objective, identifiable connection with and support of this radical, anti-Democratic QAnon conspiracy group with Judge Patrick."  Ex. 10 (Pa. C.C.P. Compl.) ¶ 6; *id.* ¶ 14 (alleging that "a proper reading of the 30 April 2021 *Inquirer* article is that Judge Patrick is linked to or otherwise had an affiliation with Q'Anon").  She then faulted Defendants for relying on "the *Inquirer*'s flawed reporting to further its own agenda and malign Judge Patrick."  ECF No. 1 ¶ 21.  Not only is Judge Patrick bound by those prior judicial admissions, *see Berckeley Inv. Grp.*, 455 F.3d

at 211 n.20 ("concessions in pleadings or briefs . . . bind the party who makes them"), but she cannot plausibly allege that Defendants acted with actual malice by relying on an earlier article that Judge Patrick herself has contended in court pleadings conveyed that she in fact had "an objective, identifiable connection with" QAnon.  Ex. 10 ¶ 6.

Moreover, even if Judge Patrick could sidestep her prior pleading's interpretation of the April *Inquirer* Article, her current assertion – that the article was actually responsible journalism highlighting her "disavowal," and that Defendants improperly refused to credit it, ECF No. 23 ¶¶ 26-27 – still would not help her plausibly plead actual malice for several reasons.  For one, Defendants' Article actually *reported* her denials, including that she had no plans to attend the "QAnon-affiliated event" and did not know "why she was listed as a speaker."  ECF No. 23-1.

For another, Judge Patrick is essentially arguing that Defendants erred by misinterpreting the prior news reports.  But Defendants' adoption of "one of a number of possible rational interpretations of a document," even if "arguably reflecting a misconception," is "not enough to create a jury issue of 'malice' under *New York Times*."  *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971); *see also Masson v. New Yorker Magazine*, 501 U.S. 496, 519 (1991) ("The protection for rational interpretation serves First Amendment principles by allowing an author the interpretive license that is necessary when relying upon ambiguous sources."); *Dunn v. Gannett N.Y. Newspapers, Inc*., 833 F.2d 446, 452 (3d Cir. 1987) (no actual malice where "[a]t most, Dunn's evidence shows that the newspaper mischaracterized the mayor's remarks" and the "headline was a rational interpretation of remarks that bristled with ambiguities").  Such error or misinterpretation cannot establish actual malice.  Because Judge Patrick has once again failed to plead facts that, if proven, would suffice to establish clear and convincing evidence of actual malice, her Amended Complaint should be dismissed.

III.   **DISMISSAL WITH PREJUDICE IS WARRANTED.**

After Judge Patrick sued Defendants over the Article in state court, ECF No. 4-2, they filed a detailed motion to dismiss.  Armed with a preview of Defendants' arguments, she voluntarily dismissed that case and refiled a revised complaint in this Court.  After the Court granted Defendants' motion to dismiss, she filed her Amended Complaint, her third try.

As explained above, Judge Patrick's Amended Complaint once again fails to plead a viable claim.  And her counsel confirmed at the April 17 pre-motion conference that she has pled all the facts available to her.  ECF No. 24.  Accordingly, this case should be dismissed with prejudice, as further amendment would be unwarranted and futile.  *See Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 249-50 (3d Cir. 2023) (affirming dismissal with prejudice because "no new factual allegations" could "disturb [the Court's] conclusion"); *accord Pace*, 432 F. Supp. 3d at 515 n.16 (dismissing case with prejudice because "[p]laintiff offers no facts – nor can he – to plausibly support Defendants' knowledge of falsity of any of the challenged statements, and he therefore cannot sufficiently plead actual malice to state a defamation claim.")

## CONCLUSION

"Judges are supposed to be [persons] of fortitude."  *Craig v. Harney*, 331 U.S. 367, 376 (1947).  That is particularly true for an elected judge like Judge Patrick, who aspired to a seat on the state's highest court and then faced scrutiny about steps she took in her campaign for that office: courting a QAnon Prophetess and her followers, and then, facing uncomfortable questions, disavowing the conspiracy theory.  But as Judge Bork put it:

> Those who step into areas of public dispute, who choose the pleasures and distractions of controversy, must be willing to bear criticism, disparagement, and even wounding assessments. Perhaps it would be better if disputation were conducted in

> measured phrases and calibrated assessments, and with strict
> avoidance of the *ad hominem*; better, that is, if the opinion and
> editorial pages of the public press were modeled on The Federalist
> Papers.  But that is not the world in which we live, ever have lived,
> or are ever likely to know, and the law of the first amendment must
> not try to make public dispute safe and comfortable for all the
> participants.

*Ollman v. Evans*, 750 F.2d 970, 993 (D.C. Cir. 1984) (Bork, J., concurring).  The Article at issue

falls well within these bounds of lawful speech about a public official.

Accordingly, for the foregoing reasons, Defendants respectfully request that the Court

dismiss Plaintiff's Amended Complaint with prejudice.

Dated:  May 5, 2023                              Respectfully submitted,

                                                               BALLARD SPAHR LLP

                                                               By: */s/ Kaitlin M. Gurney*
                                                               _____
                                                                     Kaitlin M. Gurney
                                                                     Leslie Minora
                                                               1735 Market Street, 51st Floor
                                                               Philadelphia, PA 19103
                                                               T:  (215) 665-8500
                                                               F:  (215) 864-8999
                                                               gurneyk@ballardspahr.com
                                                               minoral@ballardspahr.com

                                                               Seth D. Berlin
                                                               1909 K Street NW, 12th Floor
                                                               Washington, DC 20006-1157
                                                               T:  (202) 508-1122
                                                               F:  (202) 661-2299
                                                               berlins@ballardspahr.com

                                                               *Counsel for Defendants The Daily Beast*
                                                               *Company LLC and Laura Bradley*